RICE-STIX DRY GOODS COMPANY *v.* MONTGOMERY.

Opinion delivered May 5, 1924.

1.  BILLS AND NOTES—FRAUD—JURY QUESTION.—Whether defendant indorsed the note sued on because of the false and fraudulent representations of plaintiff's auditor as to the maker's solvency *held* for the jury.

2.  TRIAL—CREDIBILITY OF WITNESSES.—Where the testimony was conflicting, the credibility of the witnesses was for the jury.

3. FRAUD—RIGHT TO RELY UPON REPRESENTATIONS.—Where the plaintiff's auditor examined the books of a firm and knew that defendant was asked by one of the members of the firm to indorse its note to plaintiff, defendant had a right to rely upon the auditor's representations concerning the firm's financial standing.

4. BILLS AND NOTES—FRAUD—BURDEN OF PROOF.—Where an indorser, sued on a note, defends upon the ground that his indorsement was procured by fraud, he sustains the burden of proof by proving the fraud by a preponderance of the evidence, and is not required to establish same by clear, unequivocal and decisive proof.

5. TRIAL—PROVINCE OF JURY.—Where, in an action at law, there is any substantial evidence to sustain a proposition, it is the province of the jury to determine where the preponderance lies.

6. APPEAL AND ERROR—TRIAL COURT'S APPROVAL OF VERDICT.—An appellate court will not reverse the ruling of the trial court in refusing to set aside a jury's verdict sustained by sufficient evidence, even though such verdict may appear to be against the weight of the evidence.

7. TRIAL—SURPLUSAGE IN INSTRUCTION.—Where an instruction correctly declared the rule as to the burden of proof, a concluding sentence, "A bare preponderance, however, is all that is necessary," was surplusage, but did not make the instruction as a whole inherently defective.

Appeal from Pope Circuit Court; *J. T. Bullock,* Judge; affirmed.

*Hawthorne, Hawthorne & Wheatley,* for appellant; *Lyon & Swarts,* of counsel.

Fraud is never presumed, but must be proved. 144 Ark. 87; 33 Ark. 425; 9 Ark. 482; 22 Ark. 184; 37 Ark. 145; 55 Ark. 148; 92 Ark. 509; 82 Ark. 20; 40 Ark. 417. See also on the facts of the case 104 Ark. 395; 108 Ark. 350. A debtor is presumed to be solvent. 63 So. 687; Jones on Evidence, § 57; 80 Pac. 504; 85 S. W. 761 (Ky.). Subsequent insolvency is not evidence of insolvency at a given past time. 85 S. W. 761; 157 Pac. 1179; 61 N. W. 942. The law raises no presumption of knowledge from the mere fact that the representation is false. 27 C. J. 48. Failure to prove any one of the essential elements of fraud is fatal. 27 C. J. 47. The *scienter* must be proved. 22 Ark. 454. See also 143 Ark. 477; 27 Cyc. 44; 12 R. C. L. 350. This court will render judgment

where one should have been directed by the trial court. 122 Ark. 451; 136 Ark. 52; 139 Ark. 294; 147 Ark. 402. See also 134 Ark. 543.    A presumption of good faith prevails until fraud is proved.    45 Ark. 492; 22 C. J. 146; 27 C. J. 44; 111 S. W. 67.    Instruction No. 2 was abstract, and calls for a reversal.    148 Ark. 278; 154 Ark. 547; 88 Ark. 454. Instruction No. 4 was erroneous. This instruction deals with the degree of proof required to show fraud.    See 41 L. ed. 425; 106 N. W. 1074, 115 Am. St. Rep. 1010.

*A. S. Hays* and *J. B. Ward,* for appellee.

Different conclusions might have been drawn from the evidence adduced, and it was proper to submit same to the jury.    76 Ark. 88.    See also 120 Ark. 206; 140 Ark. 356.    The agent of appellant owed to appellee the duty to disclose such facts as were peculiarly in his possession, and not to do so was a fraud.    135 Fed. 621; 149 N. W. 882.    Fraud vitiates a contract both at law and equity.    3 R. C. L. 318; 30 Ark., star p. 374; 22 Ark. 517.    Appellant did not specifically object to any instruction given, nor did it ask a proper instruction, and it is now too late to complain.    78 Ark. 27; 112 Ark. 477; 13 Ark. 341; 157 Ark. 609; 123 Ark. 119; 141 Ark. 346; 129 Ark. 95.

WOOD, J.    This is an action by the Rice-Stix Dry Goods Company, a corporation of Missouri, hereafter called appellant, against W. A. Montgomery, hereafter called appellee.    The appellant alleged that the appellee is an indorser on a note executed by Gibson Bros., bankrupts, on November 10, 1920, for the sum of $1,797.12. The appellee answered, and admitted that he executed the note, but denied that he was liable, and averred that Gibson Bros., soon after the note was executed, were adjudged bankrupt; that the appellant filed its claim covered by the note in suit before the referee in bankruptcy. Appellee further averred that his indorsement of the note was procured by fraud and misrepresentation of the appellant, in that the appellant represented to the appellee, prior to securing his indorsement, that the firm of

Gibson Bros. was solvent; that appellant was their just creditor, and that Gibson Bros. would be financially able to meet their obligations, thereby relieving the appellee of any liability because of his indorsement of the note; that appellee, relying on this statement of the appellant as to the financial ability of Gibson Bros., was induced to indorse the note; that the statements made by the appellant as to the financial condition of Gibson Bros. were false and fraudulent, and made for the purpose of procuring the signature of appellee to the note; that the appellant knew, at the time the statements were made, that they were false, and knew that Gibson Bros. were hopelessly insolvent and would not be able to avoid bankruptcy proceedings. The appellant introduced the note in evidence.

The appellee testified that he lived at Atkins. He signed the note. He did not owe appellant anything, and was not interested in the mercantile firm of Gibson Bros. Mr. Gibson asked witness to sign the note with him, but witness did not sign the note on Gibson's mere request. Witness first had a conversation with a man by the name of Boldt with reference to witness' signing the same. Witness refused to sign until he had talked with Boldt. Witness walked in (the business house of Gibson Bros.), and this conversation took place. Boldt said, "They say you are all right." I said, "Well, I generally pay anything I owe," and I further said, "You have gone over these books, and how is this business?" He said, "It is all right," and so he wrote the note, and made the date the first of October, and he read it over, and I said, "Now in this cotton country sometimes it is a late fall, and that is too early to pay a debt—to collect money." He said, "Well, I will make it the fifteenth." I said, "That is all right—make it the fifteenth of October instead of the first." Witness signed the note. He would not have signed the note at that time, or at any other time, but for the representation of Mr. Boldt. Witness knew that a man by the name of Boldt was in there, making an investigation. Witness said to Boldt, "You have made

an audit of these books, and they are all right, are they?"
He said "Yes," and I said, "How are the books?" and
he said, "All right." Witness had known the Gibson
brothers twenty-six years. Witness had never loaned
them any money and had never indorsed any paper for
them before. It was late in the evening when this
occurred. Just before train time. It was witness' under-
standing that Boldt left on the afternoon train.

Sam Gibson testified that he had lived in Atkins
thirty years. He was a member of the firm of Gibson
Bros. The other brother was William Gibson, and he
and his brother had been in the mercantile business in
the town of Atkins two years. The note was executed
on the 20th of October. Suit was filed against the firm
on the last of November, and it was thrown into bank-
ruptcy on the second or third of December following.
At the time it was thrown into bankruptcy the firm owed
about $40,000. Boldt, representing appellant, came to
Atkins one morning, and was there until late the next
evening—practically two days. He made a complete
investigation of the business before he made the state-
ments in regard to the business. He audited the books
of the firm. There had been a dispute between the firm
and the appellant about a shipment of goods, and witness
thought Boldt's business there was to see about that.
Boldt audited the books two days. He said appellant
was the biggest creditor. He said that the firm of Gib-
son Bros. was in good condition; that it was solvent.
These statements were made after he had audited the
books and before he asked the witness to get Dr. Mont-
gomery or somebody to sign the note. Witness would
not have tried to secure an indorsement on the note if
Boldt had not stated that the firm was solvent. Witness
went to appellee to secure his indorsement. Appellee
talked to Boldt in the presence of witness. Appellee
walked into the office, and Boldt said to him, "You must
have lots of confidence in those boys," and appellee
replied, "Yes, I have." Appellee asked Boldt, "How is
their business?" and Boldt replied, "It is all right."

Appellee said, "If the business is all right, I will sign the note." Appellee knew at the time, and asked Boldt if he had audited the books. On that day Boldt took part of the goods out of the store, amounting to something over $1,000, for which he gave Gibson Bros. credit on their account for these goods, which were bought of appellant. Boldt didn't tell appellee, before he signed the note, that he had taken these goods and given Gibson Bros. credit for same. The appellant filed its claim against Gibson Bros. with the referee in bankruptcy, but appellant was not permitted to participate in the division of the assets.

On cross-examination the witness stated that Boldt told us, after he had gone over the books, that if we would get out and do some collecting we would be all right; that our condition of affairs depended upon our collections and general business conditions in the fall. Witness told appellee what Boldt said—that the firm of Gibson Bros. was in good condition—was solvent.

The appellee, on being recalled, testified that, at the time he signed the note, he didn't know that the appellant had taken out of the stock of Gibson Bros. twelve or fourteen hundred dollars' worth of goods, for which appellant gave the firm a credit of between $1,000 and $1,100.

Witness Huey testified, for appellant, that he was the bookkeeper for Gibson Bros. when Boldt went over the books. Boldt worked in the morning and most of the afternoon, and a few minutes the next morning, but he did it all practically in the afternoon.

Boldt testified, for the appellant, that he was its auditor and adjuster. He made no representation to the appellee to influence him one way or the other. Witness' transaction was with Gibson Bros. They made the necessary arrangements with the appellee. The only conversation witness had with appellee was the usual greeting of one man to another upon meeting. Witness had entered into an agreement with Gibson Bros. whereby appellant was to carry the amount covered by the note in

question until the fall of 1921, provided they would give
good security.   They thought they could get the appellee
to indorse the note.   Witness went to the banks and made
inquiry as to appellee's financial standing, and satisfied
himself that appellee's indorsement would make a good
note.   Witness came back, and told Gibson Bros. that
appellant would grant the extension requested upon the
appellee's indorsement of their note.   Up to this time
witness had not seen the appellee.   One of the Gibson
brothers went out on the  street, located the appellee,
brought him into their office, and appellee indorsed the
note.   Witness was not in the presence of the appellee
exceeding five minutes.   He made no statement to the
appellee regarding the financial standing of the Gibson
brothers.   The fact that witness wanted an indorsement
on the extension of the credit of Gibson Bros. for a year
carried with it a liability on the part of the appellee to
pay if Gibson Bros. did not.   The note was signed in
witness' presence.   The appellant did not secure any
dividends from the bankruptcy court on the note in con-
troversy.

The appellant prayed the court to instruct the jury
to return a verdict in its favor, which prayer the court
refused, and to which ruling the appellant duly objected
and excepted.

The court told the jury that the only issue for them
to determine was whether or not the appellee was induced
through fraud and misrepresentation to sign the note.
The court further instructed the jury as follows:

"No. 2.   If you find from the evidence that Gibson
Bros. were in an insolvent condition at the time Mr.
Boldt visited them, and that Mr. Boldt made an exam-
ination of their financial condition, and learned that fact,
and then stated to Dr. Montgomery that they were all
right, when asked for their condition financially by Dr.
Montgomery, then the court tells you that that would
be a fraud, if relied on by Dr. Montgomery, and induced
him to sign the note, and that he would not have signed
it had it not been for that statement made by a man that

he had a right to rely on, given to him as an assurance at that time.''

''No. 3.   In considering the question whether or not this signature of Dr. Montgomery to this note was obtained through fraud and misrepresentation, take into consideration the good faith of the parties in their transaction; and in that connection you may consider all of the evidence, all of the circumstances in the whole case, and, if the plaintiff's agent obtained this signature by misrepresentation and fraudulent statements, after he had known the true conditions, and they were not true at the time he made them, and he knew they were not true, then he cannot recover.   On the other hand, Dr. Montgomery could not willingly place his signature to this note and then afterwards learn that Gibson Brothers were insolvent, and because he learned that, afterwards say, 'That I am going to kick out.  I did not understand they were in that condition, or I would not have signed that note.'   He cannot do that.   He is bound by his signature, unless, at the time he signed it, you find that he was induced to sign it through misrepresentation and fraud.''

''No. 4.   Now, the burden is on Dr. Montgomery, the defendant, to establish that fact.   To establish the fraud and misrepresentation.   And he must establish that by a preponderance of the testimony—that is, an outweighing. The testimony on his side must outweigh the testimony on the other side.   A bare preponderance, however, is all that is necessary.''

The appellant made a general objection to the above instructions.   The jury returned a verdict in favor of the appellee.   Judgment was rendered in his favor, from which is this appeal.

1.   The appellant contends that there is no testimony to sustain the verdict, and that the court erred in refusing its prayer for a directed verdict in its favor.

In the recent case of *Fowler* v. *Hammett*, 162 Ark. 307, we said:   ''In testing whether the evidence be sufficient to sustain the verdict, this court must view the evi-

dence in the light most favorable to the verdict.  Where a motion for a new trial on the ground of insufficiency of the evidence to sustain the verdict has been overruled by the circuit court, this court will not disturb the verdict if there be any substantial evidence to support it.  This court will not pass on the weight of the evidence or the credibility of witnesses, for this is peculiarly the province of the jury, in the first place, and of the trial court, on motion for a new trial, in the second place.  When a cause reaches this court, and the verdict is challenged, the only inquiry is whether there is any substantial evidence to sustain the verdict.  Where the testimony is undisputed, and all reasonable minds must draw the same conclusion of fact from it, it is the duty of the trial court to declare as a matter of law the only conclusion or finding of fact to be reached from a consideration of such testimony, and to direct the jury to return a verdict accordingly.''  But otherwise the issue is one of fact for the jury.

Applying these familiar rules to the facts of this record, we are convinced that the issue of whether or not the appellee indorsed the note in controversy because of false and fraudulent representations made by Boldt was one of fact for the jury.  The court therefore did not err in refusing to grant appellant's prayer for a directed verdict in its favor.  The court ruled correctly in submitting the issue to the jury, and it was submitted under correct declarations of law.

It could serve no useful purpose to argue the testimony.  It is fully stated above, and speaks for itself. The credibility of the witnesses was for the jury, as the court informed them.  Giving the testimony of the appellee and the witness Gibson its strongest probative value in favor of the verdict, it cannot be said as a matter of law that the jury was not justified in reaching the conclusion that the appellee indorsed the note in suit because of false and fraudulent representations made by the appellant's representative, Boldt, to the effect that the business of the Gibson Brothers, at the time the appellee

signed their note, was all right—meaning that the firm was solvent; that the appellee relied upon such representation, and had the right to rely on it, and that, but for such representation, he would not have signed the note; that such representation was false, and that the appellant's representative, Boldt, knew such representation to be false at the time he made it. According to his own testimony, Boldt was the auditor and adjuster for the appellant, and had been sent to Atkins to adjust the Gibson Brothers' account with the appellant. He had looked over the books of the firm, and the appellee had the right to rely upon his representation concerning the financial status of the firm. True, Boldt testified that he made no representation to the appellee concerning the financial standing of the firm of Gibson Brothers, but the testimony of the appellee, and also of Gibson, was to the contrary, and this presented a sharp conflict in the testimony, which it was the province of the jury to weigh and determine whom they would believe.

Learned counsel for appellant argue that, even if Boldt, in responding to the inquiry of the appellee concerning the business of Gibson Brothers, stated that, according to their books, the business was all right, there is nothing in the record to show that this answer was false, and that there is no testimony to show that Boldt made such representation with the intention to deceive. But we do not concur with counsel in this view. It was Boldt's business to examine the books and ascertain what the financial standing of the firm of Gibson Brothers was. The appellee had the right to rely upon his statement that he had done so and ascertained that the business was all right—that is, that it was solvent. It is significant that Boldt did not testify that, after his examination of the books, he found it to be a fact that the business was all right—that it was solvent. He only denies that he made any such representation. He does not claim, in his testimony, that the business was in fact at that time solvent. The fact that the business soon thereafter utterly collapsed, and that Boldt at that time withdrew over a

thousand dollars' worth of the goods in order to reduce Gibson Brothers' account, were circumstances. which the jury had a right to take into consideration in determining whether the business of Gibson Brothers, at the time the note was indorsed by the appellee, was in fact *all right* and solvent.   So, if the representations were in fact made by Boldt, and the jury had the right to find that they were, from the testimony of the appellee and Gibson, then there is testimony from which the jury might have found that these representations were false.   Counsel for appellant argue that the burden of proof on the appellee is the same as if he were seeking in equity to rescind his contract and cancel the note, so far as he is concerned, for fraud.   They cite *Cannon* v. *Jackson,* 40 Ark. 417; *Kincaid* v. *Price,* 82 Ark. 20; *Holt* v. *Moore,* 37 Ark. 145; *Fitzgerald* v. *Walker,* 55 Ark. 148-152, and that line of cases.   But the rule in these cases, to-wit, that, before equity will cancel, set aside, or reform a deed or instrument for fraud, the proof of the alleged fraud must be clear, convincing and unequivocal, has no application to actions like this at law.   Here no affirmative relief of cancellation or reformation of an instrument is sought, but the defense is simply that of nonliability because of deceit and fraud in procuring the instrument which is the foundation of the action.   While fraud at law, as well as in equity, is never to be presumed, and must be proved, yet, in actions at law, one who has the burden of proof to establish fraud meets the requirements of the rule when he proves the fraud only by a preponderance of the evidence.   The same rule likewise prevails in equity, except in those cases where the rescission, cancellation, or reformation of a writing for fraud of one party and mistake of the other, or mutual mistake, is the relief sought, in which latter case, as we have stated, the proof of fraud or mistake must be clear, unequivocal, and decisive.   *Welch* v. *Welch,* 132 Ark. 227-36.   Where, in an action at law, there is any substantial evidence to sustain a proposition, it is the sole and only province of the jury, or judge trying as a jury the issue of fact, to deter-

mine where the preponderance lies. See *Fowler* v. *Hammett, supra; Twist* v. *Mullinix,* 126 Ark. 127.

As is said in the last cited case, at page 439; "Perhaps in the majority of courts of last resort in this country the rule obtains that, where the trial court has sustained the verdict of a jury, the court of review will not reverse the ruling of the trial court in refusing to set aside such verdict, where there is sufficient evidence to sustain it, even though, in the opinion of the appellate court, such verdict may be clearly against the weight of the evidence." Certainly, it cannot be said as a matter of law that there was no substantial evidence to sustain the verdict and to uphold the ruling of the trial court in overruling the motion for a new trial in this case.

The appellant contends that instruction No. 4 given by the court was erroneous because it used the language, "a bare preponderance, however, is all that is necessary."

The court, in the first part of the instruction, had correctly declared the law as to the burden of proof, and the concluding sentence was unnecessary and surplusage. But the language of this sentence did not make the instruction, as a whole, inherently defective. The trial court doubtless would have eliminated the objectionable language if its attention had been drawn to it by specific objection. The appellant failed to make such objection.

We find no reversible error in the rulings of the trial court, and its judgment is therefore affirmed.