MISSOURI PACIFIC RAILROAD COMPANY *v.* BENNINGS.

4-2683

Opinion delivered October 17, 1932.

R. E. *Wiley* and *Richard M. Ryan,* for appellant.

H. B. *Means,* for appellee.

MEHAFFY, J. This suit was brought by the appellee in the Hot Spring Circuit Court for damages for killing a mule belonging to appellee. He alleged that the value of the mule was $200. It was alleged that the mule was negligently killed by being struck by one of defendant's freight trains, and that payment had been demanded and refused. Defendant answered, denying that appellee owned the mule, and denying all allegations with reference to killing the mule, and its value.

Appellee testified in substance that on February 14, 1931, he found his mule dead, and that it had been dead for something like three or four hours. The mule was found about two miles from where appellee lived. The mule was struck inside of the railroad fence, and the signs showed that the mule was knocked toward the south, and the track at this point was not straight; that it was night when he found his mule, but that he went back the next day and made an examination and he could see where the mule had run down the track. The mule's tracks disappeared at the cattle guard.

Appellee bought the mule from Green & Meador, and paid $200 for it. It was worth what he paid for it, and it weighed 1,100 pounds. It was three years old when he bought it, and he had had it about three years. Appellee also testified that he had inquired about the value of mules, and mules like the one killed sold generally for about $200. The mule got out because the gate was left open. He did not see the mule killed. There was a deep

cut at the place where the mule was killed. The cut was shoulder deep. He saw the mule's tracks ten or fifteen yards from the crossing, running down by the end of the ties. There was a hole knocked on the mule's right hip, and one behind the shoulder. He based his idea of how the mule was struck by the tracks. The tracks were between the ties and the rail.

John Walters testified in substance that he knew appellee, and knew about his mule being killed in February, 1931; made an examination of the place where the mule was killed, and you could see this crossing 1,500 feet from it; the mule's tracks were along the end of the crossties, and he noticed them for a distance of 75 feet. The tracks were along the end of the ties, and between the ties in the corner, and the mule jumped the cattle guard, and the train struck him and threw him into a post and bent the post; saw the mule after it was killed, and it was hit on the right side, four ribs broken, a hole punched in behind the right shoulder, and also a hole somewhere around the root of his tail. Witness lived about 75 yards from the crossing. The cut there varies from eight to fifteen feet; saw the mule's tracks 75 yards from the crossing, and could see the tracks between the ties.

John Haynie testified in substance that he did not see the mule struck, but went out to the railroad and saw three mules, and one mule had a hole in its right side. It started to the house stumbling, and ran up to the yard fence and fell dead. The whistle did not sound and the bell was not ringing. He was not positive about the train sounding a warning for the crossing, but there was no stock-alarm whistle.

Tom Bell testified that he is engaged in buying and selling mules; was acquainted with their market value, and the reasonable market value of Benning's mule was $200.

The appellee was recalled and testified that he gave the railroad notice of the killing of the mule, and the claim agent came to see him, and the company had not

paid him within thirty days. He testified that he told the claim agent that he wanted $200 for his mule.

W. B. Haynie testified in substance that he lived in North Little Rock; was a locomotive fireman for the Missouri Pacific Railroad Company, and had been for 14 years. He was fireman on the freight train when the mule was killed at Wyandotte Crossing; saw the accident; train was running 35 miles an hour. There was a crossing whistle sounded; the cut was 200 yards from the crossing, and was between 70 and 90 feet wide; saw two mules as the freight train came along that day. The mules were in the right-of-way, about 100 yards north of the cattle guard. The right-of-way fence is about 30 feet from the track. When he saw the mules, there was no danger of their being hurt by the train, and the front end of the train did not hit the mule. The mule was struck by the 7th or 8th car behind the engine. Witness was looking back and saw it happen; was looking back because the mules were running, and they ran about 100 yards before getting to the cattle guard; they started running when the front end of the engine passed them. There was nothing witness could have done to have prevented the accident. The mule attempted to jump between the cattle guard apron and the crossing when he was struck by one of the box cars. Witness saw the mule 100 yards from the crossing, and about 25 feet from the fence. He saw the mule one-fourth of a mile away. He saw two mules, and the other one stayed up on the dump. There was nothing projecting out from the cars. There was no stock alarm sounded, but the whistle for the crossing was sounded.

M. T. Wilbanks testified that he had been working for the appellant for 24 years as section foreman; found the mule on February 15, 1931, near Mr. Haynie's gate; buried the mule, and there was a hole behind the mule's right shoulder.

There was a verdict and judgment for $195, and the case is here on appeal.

Appellant's first contention is that there is no evidence tending to show that the mule was killed through any negligence on the part of defendant company or its agents, servants or employees, but that the proof shows that the mule was struck by the seventh or eighth car of the train.

Appellee and his witnesses testified that they saw the tracks of the mule where it had run along between the ties, and the evidence on the part of appellee showed that it jumped the cattle guard, and was struck then.

Appellant's witness, the fireman, testified that he ran along by the side of the train, and was struck by the 7th or 8th car back of the engine. Of course, it was impossible for the mule to have run along beside the track and make his tracks between the ties as testified by appellee's witnesses.

The evidence as to the manner of the killing of the mule is in conflict. The jury had a right to believe the testimony of appellee's witnesses, and to believe that the mule was running in front of the train. No one testified about seeing the mule at the time it was injured but the fireman. Whether the testimony of appellee's witnesses or appellant's witness is true is a question of fact to be determined by the jury. Where the evidence is in conflict, the finding of fact by the jury is conclusive here, although we might believe that it was against the preponderance of the evidence.

Appellant calls attention to authorities holding that where an unimpeached witness testifies distinctly and positively to a fact, and is not contradicted, and there is no circumstance shown from which an inference against the fact testified to by the witness can be drawn, the fact may be taken as established. The rule invoked by appellant is well established, but we have already called attention to the fact that the testimony of the fireman is contradicted, and that circumstances are shown from which an inference against the fact testified to by the fireman can be drawn. The mule could not have been running along by the side of a freight train and made

tracks between the ties, as some of the witnesses testified. Our conclusion is that the evidence was sufficient to justify the finding of the jury.

It is next contended that the court erred in giving instruction No. 1 requested by appellee. That instruction reads as follows: "You are instructed that all railroad companies operating trains in the State are liable for all damages done to or stock killed which is caused by the operation of such trains in the State."

This instruction is practically a copy of § 8562 of Crawford & Moses' Digest, and this instruction should not have been given. We have reached the conclusion, however, that there was no prejudicial error in giving instruction 1 in this case.

It was immediately followed by instructions 2 and 3, which read as follows:

"No. 2. You are instructed that when stock is killed by the operations of a train the burden shall devolve on such railroad company to show that such stock was not negligently killed, and if it fails to discharge that burden then it is liable in damages."

"No. 3. You are instructed that, if you find from a preponderance of the evidence in this case that the plaintiff's mule was killed by the operation of one of the defendant's trains, it will be your duty to find a verdict for the plaintiff unless the defendant satisfies you that it was guilty of no negligence in the killing of said mule."

The court also gave several instructions at the request of the appellant, which told them in substance that there could be no recovery unless the appellant was guilty of negligence. The court also instructed the jury that they would have no right to ignore any part of the law, or to base their verdict on any certain part of the instructions, but should consider them all together as the law of the case.

This court has said: "There are, however, cases, as we conceive, not inconsistent with that rule, where we have held that the law of the case cannot be stated in one paragraph or instruction and, though the instructions

given may be apparently conflicting, if, from the language used or the relation which the instructions are made by the whole charge to bear toward each other, it is readily seen that they are to be read together without conflict and as a harmonious whole, and they can be so read, then it is our duty to so treat them." *St. L., I. M. & S. R. Co.* v. *Rogers,* 93 Ark. 564, 126 S. W. 375, 1199. This case has been followed many times by this court. The following are some of the cases approving the rules announced in *Ry. Co.* v. *Rogers, supra; St. L., I. M. & S. R. Co.* v. *Lamb,* 95 Ark. 209, 128 S. W. 1030; *Brinkley Car Works & Mfg. Co.* v. *Cooper,* 75 Ark. 325, 87 S. W. 645; *St. L., I. M. & S. R. Co.* v. *Cleere,* 76 Ark. 377, 88 S. W. 995; *Sou. Cotton Oil Co.* v. *Spotts,* 77 Ark. 458, 92 Ark. 249; *Arkadelphia Lbr. Co.* v. *Posey,* 74 Ark. 377, 85 S. W. 1127; *Pettus* v. *Kerr,* 87 Ark. 396, 112 S. W. 886; *Miller Rubber Co.* v. *King,* 147 Ark. 302, 227 S. W. 301.

This court recently said: "Counsel for defendant insists that these should be treated as separate instructions, and that number 5 is erroneous because it takes away from the jury the consideration of whether, under the facts, the danger was so obvious and patent that the fireman must have known and appreciated it. It will be observed that these two instructions follow each other; and, from the language used, it is apparent that they should be read together, and, when so read together, they harmonize with each other. We cannot see how the jury could have been misled when the two instructions were read and considered together. Each one supplements the other, and they were doubtless so understood by the jury as well as by the counsel for the respective parties in their arguments to the jury." *Ft. Smith-Subiaco & Rock Island Rd. Co.* v. *Moore,* 172 Ark. 353, 289 S. W. 6.

The law requires jurors to be persons of good character, of approved integrity, sound judgment, and reasonable information. No one of sound judgment and reasonable information could have been misled by the instructions in this case. They could not have mis-

understood the instructions. No average person on the jury could have been misled when they were told that they should not take one instruction alone, but they must consider them as a whole, and that they must be read and considered together.

We think there is no doubt that the jury understood from the instructions, when considered together, that they could not find for the plaintiff if the evidence showed the defendant was not guilty of negligence.

A verdict will not be set aside because an erroneous instruction is given, where it is immediately followed by other correct instructions, and where it is evident the jury could not have been misled.

There are some other questions discussed by appellant, but we have reached the conclusion that there was substantial evidence to support the verdict of the jury, and that there was no error except in giving instruction No. 1, and that, when the other instructions were given to the jury, and they were directed to consider them all together, they could not have been misled.

The judgment is affirmed.

SMITH, J., (dissenting). The instruction numbered 1, set out in the majority opinion, is substantially a copy of § 8562, Crawford & Moses' Digest, which declares that all railroads operated in this State shall be responsible for all damages to persons and property done or caused by the running of trains in this State. This statute has been construed as imposing only a *prima facie*—and not an absolute—liability, but the instruction numbered 1 does not so interpret it. This instruction, read by itself, not only authorizes, but requires, the jury to return a verdict for the plaintiffs. The majority do not defend instruction numbered 1 as a correct declaration of the law; they state it does not correctly declare the law if read by itself, but they say it should not be read by itself but should be read in conjunction with other instructions given and should be considered as qualified by them.

Our cases have not been harmonious on the effect of giving an instruction erroneously directing a verdict for

one party or the other, when followed by an instruction correctly declaring the law which does not direct a verdict for either party.

The case of *Temple Cotton Oil Co.* v. *Skinner,* 176 Ark. 17, 2 S. W. (2d) 676, recognized this discord in our cases and undertook to declare the correct rule to be hereafter followed, and it was there stated to be the view of the majority of the court that it was the settled law of this State that ''separate and disconnected instructions, each complete and irreconcilable with each other, cannot be read together so as to modify each other and present a harmonious whole.'' This question, which was there definitely settled, has not been unsettled, and the giving of separate and disconnected instructions, each complete in itself and irreconcilable with another, may or may not now be erroneous.

I think it unfortunate to disturb what has been declared to be the settled law of this State in the Temple Cotton Oil Company case, *supra,* and I therefore dissent.