EATON *v.* HUMPHREYS.

4-7757 · 190 S. W. 2d 973

Opinion delivered December 17, 1945.

*Paul Talley, Ben D. Roland* and *Walter M. Purvis,* for appellant.

*Miles & Amsler,* for appellee.

SMITH, J. On August 2, 1941, appellee obtained a clerk's tax deed to a 40 acre tract of land, to which one Robert Eaton had the original title. After getting this deed, appellee proceeded to acquire, by quitclaim deeds, the title of the Eaton heirs whose respective interests varied from a fifth to a fortieth of the whole title. Appellee filed suit against two of the Eaton heirs then in possession of the land, in which he alleged his ownership of the land under his tax deed, but he alleged also, that if the deed was not valid, and did not vest title, he nevertheless owned three-fourths interest, while the defendants together owned the remaining one-fourth interest. He prayed partition of the land, and the sale thereof for that purpose, if the tax title were not valid. In the alternative he prayed judgment for the taxes which he had paid, including those for which the land sold.

One of the Eaton heirs had mortgaged her interest, and two others had sold theirs. This mortgagee and these vendees were made parties. All of the Eaton heirs were finally made parties, and numerous collateral issues were raised before the final rendition of the decree awarding appellee a lien for the taxes paid, and. ordering the land sold in its satisfaction. The finality of this decree ordering the sale of the land is not questioned, except that certain of the Eaton heirs, who had conveyed their respective interests to appellee, filed cross-complaints against him, in which they alleged that the deeds from them to him had been fraudulently procured.

The land was sold under the decree above mentioned, and appellee became the purchaser of the entire title, for the consideration of $6,200. This sale was confirmed without objection, but cross-complainants insist that they should share in. the distribution of the proceeds of this sale in proportion to their respective interests in the land, upon the theory that their deeds to appellee had been fraudulently obtained. These cross-complaints were dismissed as being without equity, and this appeal is from that decree, and no other question is presented.

We are asked to dismiss the appeal for non-compliance with Rule 9, and this might well be done on account of the incomplete manner in which the record has been abstracted, but we think also that the case may be and should be affirmed upon the record as abstracted.

The testimony of five witnesses who testified in behalf of appellee is abstracted in a single paragraph of the brief, which states merely that their testimony is more favorable to appellee than is the testimony of two other witnesses which is abstracted.

The testimony of Rebecca Coppage, one of the Eaton heirs, is abstracted, and she stated very emphatically and positively that she never signed a deed to appellee. As we understand the record, it is not insisted that she had done so; however, she is not an appellant.

George Thomas, one of Robert Eaton's heirs, did appeal, and his testimony is abstracted. As a grandson

of Eaton, he had inherited a one-twentieth interest in the land. This witness, a negro, shows himself to be a man of intelligence, who reads and writes. He was employed as a freight car oiler by the Missouri Pacific Railroad, and had been employed in that capacity for 39 years. He owns his home and has it paid for, and owns a small tract of land in addition to his home. He did not know appellee, and never discussed the sale of his interest with appellee, but he was visited by appellee's attorney and a real estate agent, who had been employed by appellee to purchase the interest of the Eaton heirs. The agent spoke to him on several occasions about selling his interest, and he finally sold it for $75. This small price in comparison with the actual value of the land is the only circumstance which lends any support to the contention that this deed was fraudulently obtained. The witness was familiar with the land and knew it was worth more. He stated that fact to the agent, and demanded a larger price, which the agent refused to give. He made the significant admission that the agent said to him that appellee ". . . had bought the land and wanted the money or the place," but neither this witness nor any of the other Eaton heirs proposed to accept the redemption offer.

The witness was probably more familiar with the land than was appellee or his agent, and he knew its value was greater than the price offered, and the deed was executed after consultation with the other heirs, four of whom joined in the deed which Thomas and his wife executed.

There had been litigation over this property between the Eaton heirs. Robert Eaton, the ancestor died testate July 9, 1901. By his will he devised a portion of the land to his daughter, Rebecca Coppage. The balance of the land was devised to two sons and a daughter, for their natural lives, with the remainder at their death to the Eaton heirs. This will was contested and broken. Apparently the Eaton heirs were unwilling and unable, by cooperation, to redeem from the tax sale, and no suit was brought to cancel the tax deed. However, the decree rendered July 13, 1944, under which the land was sold, gave

appellee a lien for the taxes paid by him, and ordered the land sold in satisfaction thereof. Thomas did testify that appellee's agent, who negotiated the purchase of Thomas' interest, stated that if he, Thomas, did not accept the offer made, he, Thomas, would get nothing. No attempt was made to show that this agent knew this statement was not true. It may have been, and would have been true if the tax sale was not invalid, and no suit had been brought to have it declared void. There was no relation of trust or confidence in the case, and no fact was concealed from Thomas.

For the reversal of the decree appellants cite and rely upon the case of *Barnett* v. *Morris*, 207 Ark. 761, 182 S. W. 2d 765. A headnote in that case reads as follows: "A written instrument may not be set aside on ground of fraud in its procurement except upon clear, satisfactory, cogent and convincing testimony, a mere preponderance thereof not being sufficient."

In our opinion the court below was warranted in finding that the testimony did not meet this requirement, and the decree is therefore affirmed.