HANSON MOTOR COMPANY v. YOUNG.

5-304                                           265 S. W. 2d 501

Opinion delivered February 22, 1954.

[Rehearing denied March 22, 1954.]

192

John D. Thweatt and Meehan & Segraves, for appellant.

William C. Daviss, Virgil R. Moncrief and John W. Moncrief, for appellee.

Minor W. Millwee, Justice. Appellants, Jimmie Hanson and Emma O. Hanson, husband and wife, opened a Willys automobile and truck agency in the city of Stuttgart, Arkansas, in May, 1946, and employed appellee, Jerry M. Young, to sell cars and do general work. Appellee remained in their employ from about the time of the opening until September 14, 1948, when his employment was terminated by appellants. Each week of his employment, appellee received from appellants a check for $50, less deductions for social security and withholding tax, each check being marked for "labor." He also received one additional check on June 20, 1947, for $50, marked "commission on jeep."

Appellee filed this action against appellants alleging an oral contract of employment under the terms of which he was to receive 3% of the gross sales of the business and a $50 weekly drawing account. He alleged that he had not been paid any of the 3% commissions and that $12,000 was due by reason thereof.

Appellants' answer alleged that appellee was employed by them in May, 1946, at a salary of $50 per week, and that no further compensation was agreed upon. The answer also alleged that on June 2, 1948, appellee executed a written instrument in which he acknowledged the terms of employment and receipt of payment in full of

the $50 weekly salary to date, and further acknowledged that such weekly salary was in lieu of a 3% commission on the gross sales.

On trial of the cause, a verdict and judgment were rendered against appellants in the sum of $4,892.20.

The principal issues presented to and determined by the jury in appellee's favor were, (1) the terms of the original oral contract of employment, and (2) whether appellee's signature to the written instrument of June 8, 1948, was obtained by the trickery, fraud or deceit of the appellant, Jimmie Hanson. The only witnesses in the case were the parties to the suit, appellee's wife and a kinsman of Mrs. Hanson; and their testimony is in irreconcilable conflict on the issues thus presented.

The first contention for reversal is that the evidence is insufficient to sustain a jury finding that the written contract of June 8, 1948, was procured by the fraud or misconduct of the appellants or either of them. In testing the sufficiency of the evidence on this point, it must be considered in the light most favorable to appellee. In briefly so reviewing the testimony on this issue, we deem it appropriate to relate some facts that are also pertinent to the first issue presented to the jury.

Appellee had been engaged in various phases of the automobile business in and around Stuttgart, Arkansas, for 20 years in the latter part of 1945. At that time appellant, Jimmie Hanson, who operated a farm near Hazen, Arkansas, wanted to enter the automobile business if he could obtain an agency but was without previous experience and approached appellee with the proposition of securing his assistance in obtaining the Willys agency at Stuttgart and with the view of appellee's future employment in the operation of the business in the event the agency could be obtained. Hanson and appellee went to Little Rock, Arkansas, where they conferred with the managers of the Little Rock Willys Motor Company about the matter. Hanson told them that he was inexperienced in the automobile business but that appellee "knew all about the business." After another trip

or two to Little Rock by Hanson and appellee, the agency was obtained. After considerable negotiations it was orally agreed that appellee should receive $50 per week and 3% of the gross sales to be paid every 6 months. Appellee and his wife, who was employed as an abstractor, located vacant lots which the appellants purchased and upon which they erected a building in which the business was operated.

Appellee began work in May, 1946, and did general sales and all other kinds of work connected with the operation of the business except mechanical labor and the keeping of the books. At the expiration of the first period of six months, and upon several occasions thereafter, appellee made demand for the commission of 3% on the gross sales, but Hanson gave various excuses and definite promises of future payment. The last of these promises was made in May, 1948, when the commissions amounted to $10,000. In the operation of the business it became necessary to execute numerous sales and other contracts and both appellee and Hanson adopted the custom of having each other sign and witness the signature of others to various papers without reading them. On June 2, 1948, Hanson came to the parts room where appellee was working and told him he had a paper he wanted appellee to sign when he had time. When appellee went to the office, Hanson presented appellee with a paper that was folded, pointed to the bottom of the second page, and said, "Put your name right there." Appellee, in pursuance of their regular custom, signed the paper without reading it and without knowledge of its contents, thinking it was a sales contract of the kind that he frequently signed in this manner. This was the employment contract introduced by appellants which provided that appellee, as party of the second part, acknowledged that his past and future employment by appellants was at a salary of $50 per week, which had been fully paid to date. The contract also provided: "Said weekly salary was agreed upon by and between the parties in lieu of a 3% of the gross sales, a straight commission basis, due to lack of saleable merchandise which ex-

isted at the time of employment." The contract was never signed by Hanson and the typewritten words, "Party of the First Part," under the line for his signature were marked through with ink. Appellee was never furnished with a copy of the instrument.

The foregoing account of the facts as related by appellee and his wife were sharply disputed by the testimony offered by appellants. According to appellants' proof, there was never any agreement to pay appellee a commission or percentage of the gross sales and appellee duly executed the contract of June 2, 1948, after he had read it and fully agreed to its terms. Appellants insist that even if this testimony is disregarded, the evidence offered by appellee is insufficient to warrant the submission of the question of fraud in the procurement of the written instrument to the jury. They rely on such cases as *Colonial and United States Mortgage Company* v. *Jeter,* 71 Ark. 185, 71 S. W. 945, and *Mitchell Mfg. Co.* v. *Kempner,* 84 Ark. 349, 105 S. W. 880, which hold that one who signs a contract after opportunity to examine it cannot be heard to say that when he signed it he did not know what it contained. In those cases there was no evidence that the signature of one of the parties to the contract was procured by fraud, trickery or other inequitable conduct. The rule announced in these cases is inapplicable, and they are to be distinguished from one where there is evidence tending to show that the fraud or inequitable conduct of one of the parties caused the other party to sign the contract under a mistake of fact, without reading the contract. Hence, the rule applicable here is that one who signs a contract, after opportunity to examine it, cannot say that he did not know what it contained in the absence of fraud or other inequitable conduct of the other party which caused him to sign the contract under a mistake of fact, without reading it. *Galloway* v. *Russ,* 175 Ark. 659, 300 S. W. 390; *Dodson* v. *Abercrombie,* 212 Ark. 918, 208 S. W. 2d 433. The trial court followed this rule in his instructions to the jury in the instant case.

Whether fraud existed in procuring a person to sign or become a party to a written instrument is ordinarily a fact question for the jury. *Winter Park Tel. Co.* v. *Strong,* 130 Fla. 755, 179 So. 289. While fraud is never presumed, the law requires good faith in every business transaction, and does not allow one party to intentionally deceive another by concealment or false representations. *Sanders* v. *Berry,* 139 Ark. 447, 214 S. W. 58. The duty of disclosure also arises where one person is in position to have and to exercise influence over another who reposes confidence in him whether a fiduciary relationship in the strict sense of the term exists between them or not. 23 Am. Jur., Fraud and Deceit, § 81. In *Stewart* v. *Clark,* 195 Ark. 943, 115 S. W. 2d 887, this court held that an act done or omitted which may be construed as fraud because of its detrimental effect, may justify the setting aside of a contract or deed irrespective of moral guilt. It is our conclusion that the evidence offered by appellee was legally sufficient to submit to the jury and to support its finding on the question of whether appellee's signature to the contract of June 2, 1948, was procured by fraud and deceit.

It is next earnestly insisted that the trial court erred in giving Instructions Nos. 1 and 4 requested by appellee. Instruction No. 1 reads: ''The plaintiff has filed this suit alleging he was employed by defendants, a partnership, to perform services for defendants and alleges there was an oral agreement by which defendants agreed to pay plaintiff, Young, a weekly salary of $50 per week, and a commission of three per cent on the total or gross sales made by defendants while plaintiff was in the service of defendants and defendants deny these allegations in so far as the alleged commissions are concerned and those are among the questions of fact for your determination.

''If defendants, a partnership, entered into a verbal contract of employment with plaintiff by which they agreed to pay plaintiff a weekly salary of fifty dollars per week and a commission of three per cent on the gross sales made by defendants during the time plaintiff was

retained by defendants in their service and if plaintiff entered upon his services in May, 1946, and continued therein until September 14, 1948, and defendants accepted and used the services of plaintiff under such contract, then such an oral contract, if any, was a legal and valid contract.

"But if plaintiff, for a consideration, without undue advantage, deceit and fraud on the part of defendants, if any, released and waived any commissions which he had earned prior to June 2, 1948, if any, then plaintiff cannot recover such commissions, if any." Instruction No. 4 contains language similar to that used in the third paragraph of Instruction No. 1, but presented to the jury in more detail appellee's theory of fraud in procurement of the written instrument and provided that if the jury found such facts to exist they would find that such writing did not constitute a waiver of commissions due, if any.

Appellants argue that the instructions, and more particularly the third paragraph of Instruction No. 1, are abstract and misleading in that they erroneously treated the written contract of June 2, 1948, as a release, assumed that the oral contract was valid, and were calculated to lead the jury to believe that the written instrument signed by appellee was of no effect unless a consideration other than recited therein was paid. Appellants insist that no pleading was filed or evidence introduced on the theory that the written contract constituted a release or waiver by appellee of any commissions that he had earned under the oral contract; and that the court, therefore, injected a question into the case upon which there was no issue. In this connection the appellants attached a copy of the written contract as an exhibit to their answer in which they asserted that the instrument constituted an acknowledgment by appellee of his terms of employment, "and receipt in full" to the date of its execution. Under this allegation and the proof adduced on the point without objection, it is not surprising that both counsel for appellee and the court were led to believe that reliance was being placed on the written

instrument as a release or waiver of prior commissions, if any, as well as an acknowledgment by appellee of the terms of employment. Moreover, the court gave other instructions which made it clear to the jury that appellee was bound by the written instrument unless it was obtained by fraud and deceit, and further that he would not be relieved of the effect of such instrument merely by a failure on his part to read it before signing it.

While it is error to give an abstract instruction, or one predicated upon facts not disclosed by any evidence in the case, such error will not be ground for reversal if the giving of such instruction is harmless and not prejudicial. *St. Louis, I. M. and S. Ry. Co.* v. *Jackson,* 96 Ark. 469, 132 S. W. 206, 31 L. R. A., N. S. 980; *W. U. Tel. Co.* v. *Franklin,* 114 Ark. 469, 169 S. W. 234, Ann. Cas. 1916D, 466; 3 Am. Jur., Appeal and Error, § 1122; 5 C. J. S., Appeal and Error, § 1763a. In *Mo. Pac. Rd. Co.* v. *Bennings,* 186 Ark. 303, 53 S. W. 2d 599, the court said: ''A verdict will not be set aside because an erroneous instruction is given, where it is immediately followed by other correct instructions, and where it is evident the jury could not have been misled.''

If it be conceded that the instructions were erroneous because they were in part abstract, it is our conclusion under all the facts and circumstances that no error prejudicial to the substantial rights of the appellants resulted in the giving of such instructions. In the first place the abstract matter was invited by appellants' plea in its answer. The instructions were followed by three other instructions which correctly and succinctly laid down the rules under which the jury was to consider the written instrument. In our opinion the matter complained of, though erroneous, was not calculated to confuse or mislead the jury in their deliberation and thus call for a reversal of the case.

It is also argued that Instruction No. 4 was erroneous because it required appellee to prove fraud or deceit in the procurement of the written contract by a mere preponderance of the evidence. Appellants rely on a

line of chancery cases such as *Morrilton Ice and Fuel Co.* v. *Montgomery,* 181 Ark. 180, 25 S. W. 2d 15, and *Eaton* v. *Humphreys,* 209 Ark. 525, 190 S. W. 2d 973, which hold that a written instrument may not be canceled or reformed in equity on the ground of fraud except upon clear, satisfactory and convincing evidence, and that a mere preponderance is insufficient. In those cases fraud or mistake is pleaded as a ground of affirmative relief. But the instant action is one at law in which no cancellation of a written instrument is sought as affirmative relief, but appellee merely seeks to avoid the consequences of a written instrument. The correct rule to be applied in such cases is laid down in *Rice-Stix Dry Goods Co.* v. *Montgomery,* 164 Ark. 161, 261 S. W. 325. That case involved the question whether the maker of a note sued on was induced to execute it through fraud and misrepresentation, and it was contended that the burden of proof was upon the maker as if he were seeking to cancel the note in equity. The court said: "But the rule in these cases, to-wit, that before equity will cancel, set aside, or reform a deed or instrument for fraud, the proof of the alleged fraud must be clear, convincing, and unequivocal, has no application to actions like this at law. Here no affirmative relief of cancellation or reformation of an instrument is sought, but the defense is simply that of non-liability because of deceit and fraud in procuring the instrument which is the foundation of the action. While fraud at law, as well as in equity, is never to be presumed and must be proved, yet in actions at law one who has the burden of proof to establish fraud meets the requirements of the rule when he proves the fraud only by a preponderance of the evidence." See also, *Kansas City Southern Ry. Co.* v. *Sanford,* 182 Ark. 484, 31 S. W. 2d 963, cert. den. 283 U. S. 825, 51 S. Ct. 347, 75 L. Ed. 1439, and cases there cited.

On the whole case, we find no prejudicial error and the judgment is affirmed.

GEORGE ROSE SMITH, J., dissenting. I think that instructions one and four were erroneously given. By these instructions the jury were told that the written contract

had to be supported by an independent consideration. Of course that is not the law, since in an executory bilateral contract each promise is consideration for the other. There was no evidence whatever of any additional consideration having been given in this case; so the court's charge was tantamount to telling the jury to disregard the agreement. Counsel for the appellants raised this exact question by a specific objection to these instructions. Their objection should have been sustained.