HERRING–MARATHON MASTER PARTNERSHIP B, doing business as Park Plaza Mall, Plaintiff–Appellee,

v.

BOARDWALK FRIES, INC., Defendant–Appellant.

No. 91–3570.

United States Court of Appeals, Eighth Circuit.

Submitted April 17, 1992.

Decided Nov. 19, 1992.

---

Roger Dale Rowe, Little Rock, Ark., argued, for defendant-appellant.

David Couch, Little Rock, Ark., argued, for plaintiff-appellee.

* The Honorable Daniel M. Friedman, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

Before RICHARD S. ARNOLD, Chief Judge, FRIEDMAN,* Senior Circuit Judge, and LOKEN, Circuit Judge.

LOKEN, Circuit Judge.

Boardwalk Fries, Inc., appeals the district court's[1] adverse judgment in Herring–Marathon Master Partnership B's ("Marathon") suit for unpaid rent under a shopping center lease. Boardwalk contends that Marathon's misrepresentations as to the sales of other tenants in the center induced Boardwalk to enter into the lease. We affirm.

Marathon owns and operates the Park Plaza Mall in Little Rock, Arkansas. The Mall opened in July 1988. On March 21, 1989, Boardwalk entered into a ten-year Lease Agreement with Marathon to operate a Boardwalk Fries restaurant in the Mall's food court. In April 1989, Boardwalk signed a Franchise Agreement with Ken Rittmueller and James Tandy. With Marathon's approval, Boardwalk sublet its Park Plaza Mall space to Rittmueller and Tandy as franchisees, and they opened the restaurant on May 21, 1989.

In March 1990, Rittmueller and Tandy closed the restaurant and abandoned the premises because of poor sales. Marathon then filed this action against Boardwalk to recover unpaid rents, and Boardwalk filed a third party claim for indemnity against Rittmueller and Tandy.[2] Tandy alleged that Marathon fraudulently induced the franchisees to assume the lease by providing inflated sales figures for other tenants in the Park Plaza food court. Boardwalk adopted this defense and it was a central issue at trial. It is our sole focus on appeal.

The case was tried to the court on August 19, 1991. At trial, Jack Csicsek, Boardwalk's Vice President of Franchising and Leasing, testified that he was "solely responsible for the entire negotiation of the economic terms of the lease." In January

2. Prior to trial, Boardwalk's third party complaint against Rittmueller and Tandy was dismissed without prejudice.

1988, Csicsek contacted William Morris, Marathon's leasing agent for the Park Plaza Mall, because another franchisee was interested in operating a Boardwalk Fries restaurant in the Mall. Morris and Csicsek orally agreed on a ten-year lease with an average annual rent of $27,000, but the prospective franchisee elected not to proceed.

In 1988, Rittmueller and Tandy were looking for a location to open a Boardwalk Fries franchise and contacted Morris to discuss the possibility of leasing space in the Park Plaza Mall. In January 1989, Rittmueller advised Csicsek of these discussions, informing him that space was available for an annual rent of $40,000 and that Rittmueller and Tandy wanted to pursue a franchise at this location. Csicsek then called Morris to find out why the rent would be substantially higher than the amount Csicsek and Morris had agreed to before the Mall opened:

Q: And did you ask him why the rent had gone up?

A: Absolutely. That's the sole reason that I called.

Q: Okay. What was his response?

A: I called and I said, 'Bill.... [w]e've got a significant difference here between what you are proposing now and what you proposed previously.' And his response verbatim was, 'Look, this mall is opening gangbusters.... We've got a couple players in this food court that are going to do more than a million bucks.'

\* \* \* \* \* \*

Q: Were the existing sales numbers significant to you in your decision to enter into this lease agreement on behalf of Boardwalk Fries?

A: They were the only deciding factor. We had liked the center when we looked at it previously.... But the numbers, the sales figures that were represented in the food court certainly were the determining factor in us going ahead and saying to Mr. Rittmueller, 'Let's go ahead and accept this lease.'

The trial exhibits included Marathon's Cumulative Monthly Sales Reports, periodic computer print-outs showing monthly and annual sales figures for all mall tenants. These reports reflect that, for the last six months of 1988, two of the restaurant tenants had sales of more than $1,000,000 on an annual basis.

Boardwalk based its fraud defense primarily upon the trial testimony of Rittmueller and Tandy. Rittmueller testified that he had more than a dozen conversations with Morris between October 1988 and the signing of the lease in March 1989. During four or five of those conversations, Morris orally provided sales figures for other tenants of the newly opened food court. According to Rittmueller, Morris sent him a typewritten sheet listing four months' sales for four or five of the food court tenants—a document Rittmueller subsequently lost—but never showed him a Cumulative Monthly Sales Report. If Rittmueller's testimony is believed, the sales figures that Morris provided were substantially inflated compared to the Cumulative Monthly Sales Report data. Tandy's trial testimony supported Rittmueller. However, Rick Smith, manager of the franchise restaurant, testified that he, Tandy, and Rittmueller were given a Cumulative Monthly Sales Report when they visited Marathon's offices in the fall of 1988.

Morris testified that he discussed the sales volumes of other food court tenants with Rittmueller and Tandy before the lease was signed and that he responded truthfully to Rittmueller's and Tandy's inquiries about sales figures. Specifically, he told Rittmueller that Chick–Fil–A reported $130,000 in sales in August 1988, and that Sbarro's pizza restaurant reported sales of $77,000 to $80,000 for part of November and December 1988—figures that are consistent with the Cumulative Monthly Sales Reports for that period.

Noting that the trial testimony was inconsistent on the fraud issue, the district court's findings and conclusions stated, "I accept the testimony of Mr. Morris ... and I reject the testimony of Ken Rittmueller, Tandy and Mr. Csicsek." Based on the testimony of Rick Smith, the district court further found "that [Marathon] furnished Rittmueller and Tandy with a computer

printout which accurately reflected the business done by other tenants of the Food Court prior to signing either the lease or the franchise." The court found that Boardwalk had greater knowledge and experience than any other party and failed to investigate the deal adequately. The court concluded that Marathon had made no material misrepresentations upon which Boardwalk relied. It entered judgment for Marathon for $92,778.80, the total unpaid rent at the time of trial.

On appeal, Boardwalk contends that the district court erred in finding that Marathon's agent, William Morris, committed no misrepresentation. The monthly sales of other food court tenants declined significantly between the Park Plaza Mall's opening in July 1988 and the signing of Boardwalk's lease in March 1989. Boardwalk argues that Morris had a continuing affirmative duty to disclose that fact. In addition, Boardwalk claims that Morris at least had an obligation to disclose those declining sales in response to repeated requests for sales figures by Rittmueller and Tandy over the course of the lease negotiations.

 We review the district court's findings for clear error, Fed.R.Civ.P. 52(a), which means we must accept that court's account of the evidence if it "is plausible in light of the record viewed in its entirety." *Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The court's finding crediting William Morris's testimony can be clear error only if objective evidence contradicts Morris's story, or if that story is so internally inconsistent or implausible that a reasonable factfinder would not credit it. *See Griffin v. City of Omaha,* 785 F.2d 620, 626 (8th Cir.1986). Applying this standard, we determine that the findings and judgment of the district court must be affirmed.

 1. We reject Boardwalk's contention that, under Arkansas law, Marathon had an affirmative duty to disclose the declining sales experienced by other food court vendors. "As a general rule there is no duty between vendor and purchaser to disclose any information affecting the val-

ue of property in an arm's length transaction." *Consolidated Oil & Gas, Inc. v. Ryan,* 250 F.Supp. 600, 605 (W.D.Ark.), *aff'd,* 368 F.2d 177 (8th Cir.1966). There was no special relationship between these parties giving rise to such a duty. *Compare Hanson Motor Co. v. Young,* 223 Ark. 191, 265 S.W.2d 501, 504 (1954). As the district court found, Boardwalk is an experienced and knowledgeable restaurant franchising company that can be expected to know what information it needs to obtain in negotiating leases of this type. In these circumstances, Arkansas law imposes no affirmative duty to disclose other tenants' declining sales figures over the course of the lease negotiations. *See Ward v. Worthen Bank & Trust Co.,* 284 Ark. 355, 681 S.W.2d 365, 367 (1984); *Berkeley Pump Co. v. Reed–Joseph Land Co.,* 279 Ark. 384, 653 S.W.2d 128, 134 (1983).

 2. Arkansas law does impose a duty on parties negotiating a real estate transaction to respond truthfully to material inquiries:

> [W]hen parties ... deal at "arm's length" and in no confidential relationship, the prospective purchaser is under no obligation to volunteer information to the vendor; but if in such a situation, the vendor makes inquiry of material matters and the purchaser undertakes to make answers, then such answers must be truthful, unequivocal and non-evasive.

*Trout v. Harrell,* 217 Ark. 670, 233 S.W.2d 233, 234 (1950).

 Relying on the testimony of Rittmueller and Tandy, testimony the district court expressly rejected, Boardwalk asserts that, in response to repeated inquiries, Morris provided Rittmueller and Tandy with a list of inflated sales figures. However, they claimed to have lost that list and, as the district court observed, "their explanation for the loss of this very important document is unconvincing and unsatisfactory."

Rittmueller and Tandy also testified that they never saw a computerized Cumulative Monthly Sales Report until after the lease

was signed. The district court, however, chose to credit the testimony of Rick Smith that Rittmueller and Tandy were given such a report in the fall of 1988. That finding is devastating to Boardwalk's case. Once Rittmueller and Tandy were aware such a document existed, they should have specifically requested copies of each succeeding edition. The record reflects that no such request was ever made.

Morris testified that he responded truthfully to all inquiries about other food court vendors' sales, and the district court credited that testimony. The sales figures that Morris testified he provided orally to Tandy and Rittmueller were consistent with the Cumulative Monthly Sales Reports. On this record, we cannot conclude that the district court's finding that credited Morris's recollection of these conversations, rather than Rittmueller's and Tandy's, is clearly erroneous.

3. Finally, we note that the testimony of Boardwalk's vice president, Csicsek, provides independent support for the district court's decision. Csicsek testified that he, not the prospective franchisees, Rittmueller and Tandy, was solely responsible for negotiating the lease's economic terms. Csicsek testified that he made the decision to enter into the lease based upon one phone call to Morris. Csicsek admitted that he never saw a computer generated printout of other tenants' sales volumes, nor the document Rittmueller claimed to have received from Morris listing the sales figures for various tenants. In these circumstances, we agree with the district court that Boardwalk made an inadequate inquiry before signing the lease. If Boardwalk considered the prior sales of other tenants in the newly opened food court material, it should have unambiguously requested that Marathon provide the required information. Thus, Boardwalk's defense of fraud in the inducement is without merit.

The judgment of the district court is affirmed.