## MAIN v. FORT SMITH.

1. MUNICIPAL CORPORATIONS: *Duty of city council in authorizing street improvements.*

A general ordinance of the city of Fort Smith provides, that whenever a majority in value of the property holders owning real property, in any locality within the limits of the city, shall present a petition to the council, asking that a street improvement be made, at the expense of the property holders, owning real property adjacent to the locality to be improved, it shall be granted, and the the council shall authorize the mayor to publish an order, that such improvement shall be so made, within sixty days. The ordinance also provides that the

order of the mayor "shall specify briefly, but plainly, the kind of improvement ordered," the locality to which it is limited, etc. *Held:* That in authorizing the publication of an order under such ordinance, it is not necessary that the council shall prescribe the dimensions of the improvement, nor the material of which it shall be made, as that duty is to be performed by the mayor.

2. SAME: *Contract for street improvements.*

Under an ordinance of the city of Fort Smith, which provides that contracts for the improvement of streets shall be let to the lowest bidder, and that the lowest bid shall be submitted to the council for action, a contract for the construction of gutters was let, by a committee appointed for that purpose, and afterwards the council, with a full knowledge of all the facts, made an order authorizing the committee to employ a superintendent of the work. *Held:* That the order for the employment of the superintendent was an acceptance of the bid, and that the provision of the ordinance requiring its submission to the council was substantially complied with.

APPEAL from *Sebastian* Circuit Court.

R. B. RUTHERFORD, Judge.

*Collins & Balch* for appellant.

1. The city council *in its official capacity* has never passed any valid ordinance or resolution declaring their intention to construct said gutters. The order of June 2d does not declare what kind of material should be used, nor the cost or depth of same. This was necessary. *43 Mo., 403; id.; 353; 46 id., 577; 4 Bush., Ky., 464; 53 Cal., 44; 19 Mich., 39; Desty on Tax., 1243; Mansf. Dig., sec. 760.*

2. The city council *in its official capacity* has never entered into any contract with Wallace, or any other person, to construct said gutters, or authorize any other person to enter into such contract. *Mansf. Dig., sec. 774; 40 Ark., 105; 35 id., 75; 36 Ind., 90.* The record must show that the city council acted on the contract; that the order to enter into the contract must be in writing, and entered of record, and the ayes and noes must appear of record, and cannot be proved by oral

31

proof. *Supra; 33 Mich., 321.* The ratification of the acts of the committee could not validate the void transaction. *43 Mo., 367, 375; 4 Bush., 74, 468; 1 N. Y. Ct. App., 79; 20 id., 312; 71 id., 319; 2 Desty Tax., 1241-2-3.*

There is no principle of estoppel by which appellant is estopped. Defendant refused to sign the petition for the work, thus protesting against it. *22 Mich., 104; 40 Ind., 44; 69 Mo., 378-9; 74 id., 166-7; 31 Ark., 718; 56 N. Y. Ct. App., 258; 6 Kans., 187-9; 9 Mo. App., 29; 59 Cal., 233; 31 N. J. Eq., 585.*

*Clendenning & Read* and *M. H. Sandels* for appellee.

The acts of the council were done under sections 760, 761, Mansfield's Digest. Under these it passed a general ordinance providing for the improvement contemplated. There can be no dispute about the validity and regularity of the proceedings of the council. The petition was properly filed and the necessary order made, and publication made as required by the ordinance. *Mansf. Dig., secs. 774, 924.*

While it is true that to charge the owner with the expense of constructing sidewalks, etc., a municipal corporation must comply with all conditions precedent, whether prescribed by charter or ordinance (*2 Dill. Mun. Corp.*), *806,* yet neither the statute nor the ordinance provides that the council shall prescribe the cost of such improvement, or the kind of material to be used. They were not conditions precedent.

The petition must be taken in connection with the order, and the locality, dimensions, materials, time, etc., are prescribed and observed.

Review the authorities cited by appellant, showing that, in those States, the charters require the council to prescribe the mode and manner, etc., in which the work shall be performed. *2 Dill. Mun. Corp., sec. 812.*

It is not necessary that the ordinance or resolution directing the improvement of a street should describe the improvement in detail; it is sufficient if it gives a general direction as to the plan of the work. *9 N. E. Rep., 721; id., 723.*

2. It is not necessary that the contract itself should be submitted to the council. There must be authority "to enter into a contract," and this authority must be given in a certain way. *Mansf. Dig., sec. 774; 40 Ark., 105; 35 id., 75.* But the council could authorize an agent or committee to make a binding contract. The order to make the gutters carried with it the authority to enter into a contract. The lowest bid was submitted to the council. Parol evidence is admissible of facts omitted to be stated upon the record. *1 Dill. Mun. Corp., secs. 300, 301; 12 Wheat., 64.* But if the lowest bid was not submitted to the council, the subsequent ratification was sufficient. *1 Dill. Mun. Corp., sec. 463; 17 N. Y., 449; 19 id., 207; 31 Cal., 26.*

In making these improvements, the corporation is the agent of the property owners, and when they stand by and see them made and paid for by the corporation, they can have no relief unless they are injured, or the improvements are done in an unskilful manner, or of poor materials. *19 N. J. Eq., 376; 24 id., 143; 25 id., 295.*

BATTLE, J. On the 19th of May, 1884, the City Council of Fort Smith passed a general ordinance numbered 41, the first four sections of which read as follows:

"*Be it ordained by the City Council of Fort Smith that:*

"SECTION 1. The improvement of any street, public highway or alley, the construction, reconstruction, improvement or repairs of any sidewalk, gutter, sewer or any other local improvement within the city of Fort Smith, the cost of which may be assessed against the owners of real property adjacent

to any such local improvement, shall be done and the costs thereof assessed as hereinafter provided.

"Sec. 2.    When the improvement of any street, alley or public highway, or the construction, reconstruction, improvement or repair of any sidewalk, gutter, sewer, or other local improvement within the city of Fort Smith, shall be asked for by petition to the city council signed by a majority in value of the property holders owning real property adjoining the locality to be affected, which petition also asks that the cost of said improvement shall be assessed against said property holders, and when said petition shall be granted by the city council, said council shall authorize the mayor to publish an order that the improvement asked for shall be made by property holders owning real property adjacent to the locality to be improved, within sixty days after the first publication of such order or notice in the official paper.

"Sec. 3.    The order or notice mentioned in the preceding section shall specify briefly, but plainly, the kind of improvement ordered to be constructed or repaired, the locality to which it is limited, and the time in which it must be completed and shall be published in the official paper for ten days.    Every person, occupant or agent of any person owning or occupying property which is to be assessed for the costs of any improvement, shall also have personal notice; if he can be found, and if he cannot be found or is unknown, then a copy of such notice or order shall be left at such person's residence or place of business, and one posted at the lot or lots of such person. Such personal notice shall be served by copy, by the city marshal or deputy, and the endorsement upon said notice by the officer serving the same, shall be evidence of his action in the premises.

"Sec. 4.    All improvements herein provided for shall be constructed under the supervision, and to the satisfaction of the city engineer—if there be one—or a committee of alder-

men appointed for that purpose by the mayor. If such improvement is not made by the property holders within the time mentioned in the order of notice, the engineer or committee shall forthwith proceed to construct or repair the same, by contract, let to the lowest bidder, after advertising for bids in the official paper for five days. The lowest and best bid shall then be submitted to the city council for action, at the first regular meeting after selection by the committee."

On the 2d of June, 1884, a petition of a majority in value of the owners of the real property on Garrison avenue between Franklin and Green streets, for gutters on both sides of the avenue between the streets named, was presented to the council at a regular meeting and granted. The petition is in the following words:

" *To the Honorable Mayor and Aldermen of the City of Fort Smith:*

" The undersigned property owners, owning property on Garrison avenue between Franklin and Green streets, respectfully ask your honorable body, that you order a gutter eight feet wide to be made on both sides of said avenue, from Franklin to Green streets, at the expense of the property owners, in accordance with the provisions of City Ordinance No. (41) forty-one."

The record of the proceedings of the city council at this meeting contains the following entry:

"A petition signed by a majority in value of the owners of real property fronting on Garrison avenue for gutters on Garrison avenue from Franklin street to Green street was read. The rules were suspended by unanimous consent, and on motion to grant the petition and make an order for the gutters, the council voted as follows: Ayes—Aldermen Baker, Hight, Hunt, McKenna and Reed. Noes—None.

" Whereupon the order was made.

"On motion the Council adjourned.

　　　　　　　　　"J. Henry Carnall, Mayor.

"Attest:　C. H. Eberle, Recorder."

On the 4th of June following the mayor made an order, in which the dimensions of the gutters, and materials of which they should be made, the locality in which they were to be constructed, and the time in which they should be constructed, were specified.　It was also stated in this order that if the gutters were not made by the owners of the property along or by which they were to be constructed on or before the 4th of August following they would be made by the city and the expenses incurred in so doing would be assessed on the property chargeable therewith.　This order or notice was published in the manner prescribed by the ordinance ; and the appellant, being one of the owners of property on Garrison avenue, where the gutters were to be constructed, was served with notice.　On the 21st of July, 1884, the mayor, at a regular meeting of the council, appointed three aldermen a committee to advertise for and receive bids for the construction of the gutters, who advertised that they would receive sealed proposals for the construction of the gutters according to the specifications made by the mayor, until the 4th of August, 1884.　On the 27th of September following, the property holders having failed to make the gutters within the time allowed to them, the contract was let to M. C. Wallace, he being the lowest and best bidder.　On the 13th of November, 1884, the city council, at a regular meeting, unanimously ordered and directed the committee of aldermen to employ George H. Lyman to superintend the construction of the gutters.　On the 23d of March, 1885, at a special meeting of the council, the committee filed a report, in which they stated the work done by the contractor, and the sum due him therefor, and recommended that the amount due him be paid, and also, at the same time, filed a list and description

of the real property on Garrison avenue between Green and Franklin streets and the assessed value of the same, and the certificate of Lyman that the gutters had been completed according to the contract. On the 3d of April following, at a special meeting of the council, an ordinance assessing a tax of one per centum against the real property on the avenue between the streets named, according to the assessed value thereof as the same appears by the assessment last made by the Assessor of Sebastian county before the filing of the petition for gutters, and directing that the tax be paid on or before the 25th of May, 1885, and charging each lot and part of lot with the amount assessed against it as well as the owner thereof, and directing the city recorder to issue warrants in due form for the collection thereof, was introduced and read the first time, and, on suspension of the rules, was read the second time, and continued until the next regular meeting; and, on the 6th of April following, at a regular meeting of the council, was read the third time and passed by a unanimous vote. The amount assessed against appellant and the real property owned by him in the locality in which the gutters were constructed, was $190. On the 15th of April, 1885, the city recorder issued a warrant, directed to the city collector, commanding him to collect this amount of appellant, which was returned not paid. To recover this amount and interest of appellant, this action was brought. In the trial of it the foregoing facts were proven, and in addition to this proof it was admitted that the defendant knew that "the gutters were contracted to be constructed;" that they were being constructed; the price at which the work was to be done; saw the work being done in front of his premises, and "never made any protest to the council or attempted in any manner to prevent the work being done;" that the contractor, M. C. Wallace, was the lowest bidder, and constructed the gutters according to his contract; that each and every member of the council was fully informed of the work being done; the character

thereof; the several bids made and that the work was being done under contract, and that the amount due Wallace for constructing the gutters had been paid by the city.    Plaintiff recovered judgment against the defendant for the $190 and interest; and defendant appealed.

The Constitution of this State ordains that nothing therein "shall be so construed as to prohibit the General Assembly from authorizing assessments on real property for local improvements, in towns and cities, under such regulations as may be prescribed by law, to be based upon the consent of a majority in value of the property holders owning property adjoining the locality to be affected ; but such assessments shall be *ad valorem* and uniform." *Art. 19, sec. 27.*

In the exercise of the power vested in it by the Constitution the General Assembly has empowered municipal corporations to improve and keep in order and repair their streets, and, subject to the limitations of the Constitution, to assess and collect a charge on the owner or owners of any lot or land, through or by which a street, alley or public highway shall pass, for the purpose of defraying the expenses of constructing, improving, repairing or lighting such street, alley or public highway, in proportion to the value of such lot or land as assessed for taxation under the general law of the State, and by general or special by-laws or ordinance, to prescribe the mode in which such charge shall be assessed and determined. *Mansfield's Digest, secs. 760, 761.*    In the exercise of this power the city council of Fort Smith passed the general ordinance, numbered 41, under which it assumed to act in constructing the gutters on Garrison avenue, and in making assessments on real property to pay for the same.

It is contended by appellant that these assessments are illegal, first, because the city council of Fort Smith, in its official capacity, has never passed any valid ordinance or resolution declaring its intention to construct the gutters; and,

second, because the city council, in its official capacity, has never entered or authorized any person to enter into a contract to construct the same; and that it is essential to fix a valid tax upon property to pay for local improvements, " to first pass an ordinance or resolution, showing that a majority of the property owners to be benefited, have petitioned for the improvement, and that the same has been granted, and that the improvement shall be of certain dimensions, the material of which it shall be made and the cost thereof."

In order to understand the record of the proceedings of the city council in this case, we must read them in the light of general ordinance numbered 41. This ordinance, in effect, declares that whenever a majority in value of the property holders in any locality within the corporate limits of the city of Fort Smith desiring an improvement to be made in such locality, the cost of which may be assessed against such property holders, shall present a petition to the council asking that it be made, it shall be granted, and the council shall authorize the mayor to publish an order that the improvement asked for shall be made by the property holders owning real property adjacent to the locality to be improved, within sixty days after the first publication of such order or notice. It says the order or notice shall specify briefly, but plainly, the kind of improvement ordered to be made, the locality in which it is to be made, and the time in which it must be completed. There is nothing said in the ordinance as to the duty of the council to prescribe the dimensions of the improvement and the materials of which it shall be made, but this seems to be left to the mayor. The ordinance, after requiring a certain notice to be given, makes it the duty of the city engineer or the committee of aldermen appointed by the mayor, if the improvement is not made by the property holders within the time allowed for that purpose, to make the same by contract let to the lowest bidder after advertising for bids for five days;

1. MUNICIPAL CORPORATIONS: Duty of city council in authorizing street improvements.

and that the lowest and best bid shall be submitted to the council at a regular meeting thereof, for action. The object of requiring the lowest bid to be submitted to the council for action, evidently, is to make it necessary for the council to accept the bid before a valid and binding contract for the improvement could be made.

2. SAME
Contract for
street improve-
ments.
In this case a majority in value of the property holders owning property in the locality in which the gutters were made, by petition asked that gutters eight feet wide be made at the expense of property owners, *in accordance with general ordinance numbered 41.* The record of the proceedings of the council shows that this petition was granted, and the order was made for the gutters, meaning thereby the order to be published by the mayor. The mayor made the order he was authorized to make, and caused it to be published; and notice thereof was given to the property holders. A committee, consisting of three aldermen, was appointed to let the contract for the improvement to the lowest bidder which they did on the 27th of September, 1884. On the 13th of November following, at a regular meeting, the council unanimously authorized the committee to employ George H. Lyman to superintend the work to be done under the contract let by them. Was this an acceptance of the lowest bid received by the committee? One-half of the aldermen of the council constituted the committee who received the bids. It was admitted that every member of the council was fully imformed of the several bids made for the contract; that the work under the contract was being done, and of the character of the work. Upon this information they acted when they authorized the committee to employ Lyman to superintend the work to be done under the contract let to Wallace, the lowest and best bidder. They had a right to act upon this information without further inquiry. *Bissell v. Jeffersonville, 24 How.* (*U. S.*), *287; Dillon on Municipal Corporations, sec. 289.* It was unnecessary for the committee to have

made a formal report to the council of facts of which it already had personal knowledge. Such reports are only required to be made for the purpose of giving the council information of the facts reported. This being true it follows that when they authorized the committee to employ Lyman they thereby accepted Wallace's bid. Was this sufficient to constitute a good and valid contract between Wallace and the city of Fort Smith?

The statutes governing municipal corporations give them all the power they possess; they enable them to contract, and when they prescribe to them a mode of contracting, they cannot, in a different mode, make a valid contract, nor can they, by any subsequent approval or conduct, impart validity to such contract. On the passage of every by-law or ordinance, resolution or order, to enter into a contract, by a council of any municipal corporation, the statute requires the "yeas" and "nays" to be called and recorded; but there is no statute in this State requiring the contracts of cities and towns to be made in any particular manner. In the absence of a statute regulating the mode of making such contracts, they are not required to adopt any particular mode. In this case the city of Fort Smith, by an ordinance, the validity of which is not questioned, prescribed the mode in which contracts for certain improvements shall be made. For the protection of itself and property holders it required such contracts to be let to the lowest bidder and that the lowest bid should be submitted to the council for action.

The contract in this case was let to the lowest bidder and reduced to writing and delivered to the representatives of the city, and the council, with full knowledge of all the facts, accepted that bid by an order made and entered of record in the manner prescribed by law, authorizing the employment of Lyman to superintend the work to be done under it, and thereby completed a contract between Wallace, the lowest bidder,

and the city of Fort Smith. There was a substantial compliance with so much of the ordinance numbered 41 as prescribes the mode in which contracts for improvements shall be made. There is no complaint that the contract made is unreasonable, oppressive or fraudulent, or that any one was injured thereby. It has been performed in good faith; Wallace has done the work he contracted to do; the city has paid him, and now asks to be reimbursed by the property holders.

The judgment of the court below must be affirmed.