MORRILTON ICE & FUEL COMPANY *v.* MONTGOMERY.

Opinion delivered March 3, 1930.

*Edward Gordon* and *J. W. Johnston,* for appellants.
*W. P. Strait,* for appellees.

·KIRBY, J. This appeal is prosecuted from a decree for the balance of the purchase money due for machinery or apparatus sold to appellants, and foreclosure of materialman's lien therefor.

Appellees, an Illinois corporation engaged in business in Chicago, upon receipt of a telegram from appellants, stating: "In market for sterilizer. Send representative at once. Wire." Sent its agent to appellants engaged in the manufacture of ice at Morrilton, and sold them, under the terms of a written contract, "One (1) SEL 3 Hartman electrolytic sterilizer 400/500 G.P.H. 2020."

The contract recites the terms of sale and payment, and "the seller guarantees the Hartman electrolytic water sterilizer to deliver water clear of suspended matter, and of such clearness as to conform to the platinum wire test of the American Public Health Association, and that water from this apparatus shall conform in every respect to the limits laid down by the United States Treasury Department, Bureau of Public Health, covering potable waters. *Also bacterial count when plates are kept clean.*" (Words in italics inserted by purchaser before signing.) It also recites that the guaranty is made with the understanding that the water purifying apparatus shall be operated according to instructions furnished, and for the making of any tests desired by the purchaser, who is to furnish samples of the water for tests, etc., within 30 days after the installation of the apparatus or sterilizer. It recites further, "that it is agreed that all agreements and understandings, verbal or written, made or had respecting the machine sold, are abrogated, superseded and canceled by this contract, and at the time of the execution of same." After the execution of the contract and before the arrival of the machine sold at Morrilton, appellants sent another telegram to appellees asking about the purchase of containers for selling "electrified water." During the

negotiations for the sale of the sterilizer, one of the members of appellant's firm went with appellee's agent to examine a sterilizer of like kind in operation at Atkins, Arkansas, and after returning from the inspection of it closed and executed the contract of purchase. The title to the machine was retained by the seller until the purchase money was paid, and the contract also provided for its installation by the seller.

When the machine arrived, however, appellants, without notice to appellees, had it installed in their new ice factory, and, upon later complaint of its unsatisfactory operation, appellees sent its engineer to correct any condition that might interfere with the proper operation of the machine, which was done to the satisfaction of appellants. Appellants thereafter refused to execute the notes for the remaining purchase money due, $1,510 and interest, under the terms of the contract and within 90 days from furnishing the machine or sterilizer, installed in the new ice plant, appellees brought this suit for collection of the balance of the purchase money due for the sterilizer, for enforcement of a vendor's lien thereon and a materialman's lien against the plant, making the proper allegations in its complaint therefor and exhibiting the contract therewith.

Appellants denied the allegations of the complaint, and alleged that the appellee's agent procured the contract of sale upon false and fraudulent representations to appellants, ''that said machinery would remove from the water all bacteria, and would also remove from the water all iron in substance or nature, and enable the defendants to reduce the core in each block of ice to a feather edge which would purify the water and greatly reduce the expense of the defendants in operating said plant, and improve the quality of defendant's ice by removing the iron in solution and reducing core to feather edge, softening water and destroying or eliminating all bacteria or contamination.'' That the apparatus or machine failed to remove the iron in solution from the water,

to reduce the core in the ice to a feather edge or soften or purify the water in the manner represented by the agent, and that but for the fraudulent representations made to induce appellants to enter into the contract it would not have been made. Denied any liability under the contract, and asked judgment for $510 paid at the time it was entered into.

The agent denied having made the alleged false and fraudulent representations about what the machine would do, and stated that all the guaranty was written into the contract, which was read over before its execution by appellants, who inserted some small amendments. There was some testimony on the part of appellants tending to prove the false representations alleged to have been made by the agent, which he denied as already said, and it was not disputed about the machine doing the work properly in accordance with the written guaranty, nor any denial made by appellants of the telegram sent before the contract was entered into or after its execution, nor of the execution of it by appellants after one of the firm had visited a plant at Atkins, a town nearby, and inspected a like machine in operation. Appellants were experienced manufacturers of ice, operating two plants for that purpose, and using distilled water in the old plant. Without further recital of the testimony, it will suffice to say that the chancellor's finding that there was no false representations made in the sale of the sterilizer, and no guaranty of the effects of its performance and operation, except as written in the contract, is supported by the preponderance of the testimony.

Appellants insist that the chancellor's findings are contrary to the preponderance of the testimony, but such is not the case as already stated. Appellants alleged and sought to show that the written contract, admitted to have been executed by them, was obtained by false and fraudulent representations of a guaranty by appellees through its agent in making the sale; that the machine would in its operation remove iron in solution and other

chemicals from the water, and soften hard water. There is no contention that any misrepresentation was made as to the guaranty of the operation of the machine sold as written in the contract, and the preponderance rule of proof does not apply in an attempt to vary the written contract by the addition of a parol warranty not included therein, and false representations relative thereto. "The solemn written engagement of contracting parties cannot be reformed or amended, except upon clear and satisfactory proof that the writing fails, by reason of fraud, accident or mutual mistake in the preparation or execution thereof, to express the agreement intended to be entered into." *Mitchell Mfg. Co.* v. *Kempner,* 84 Ark. 349, 105 S. W. 880; see also *Texas Co.* v. *Williams,* 178 Ark. 110, 13 S. W. (2d) 309; *Eureka Stone Co.* v. *Roach,* 120 Ark. 326, 179 S. W. 499; *Welch* v. *Welch,* 132 Ark. 238, 200 S. W. 130.

It is true appellants do not ask a reformation of the contract nor a rescission of it, but deny liability thereunder because of alleged false and fraudulent representations guaranteeing the effect or result of the operation of the machinery, removing chemicals from and making hard water soft, not contained in the written contract, attempting to establish it by parol testimony. Such an alleged guaranty, altogether at variance with the written contract, could not be added to the writing for avoiding its effect, because of fraudulent representations as to the violation of the parol guaranty by a less degree of proof than would be required for reformation of the contract to include it. The undisputed testimony showed the amount of the purchase price still due under the terms of the contract; that the machinery was furnished and installed in the new ice plant of appellants upon the lot or site particularly described in the testimony; the refusal of appellants to pay the balance of the purchase price of the machine, and the bringing of the suit therefor, and for foreclosure of a material furnisher's lien against the ice plant within the 90 days which entitled ap-

pellees to a foreclosure of a lien against the plant for the balance of the purchase money due. *Anderson* v. *Seamans,* 49 Ark. 480, 5 S. W. 799; *Pfeifer Stone Co.* v. *Brogdon,* 125 Ark. 428, 188 S. W. 1187; *Carr* v. *Hahn & Carter,* 126 Ark. 609, 191 S. W. 232; *Standard Lumber Co.* v. *Wilson,* 173 Ark. 1029, 296 S. W. 27.

We find no error in the record, and the decree is affirmed.