Jerry RHODE et ux *v.* William KREMER et ux, d/b/a
MILLER ENTERPRISES MOBILE HOMES and
KAUFMAN AND BROAD HOME SYSTEMS, INC.

83-37                                                   655 S.W.2d 410

Supreme Court of Arkansas
Opinion delivered July 11, 1983

*Henry & Duckett,* for appellants.

*Davidson Law Firm, P.A.,* for appellees and cross-appellants, Kremer.

*Rose Law Firm, P.A.,* for appellee, Kaufman and Board Home Systems, Inc.

FRANK HOLT, Justice. This litigation arises from the sale of a mobile home. On February 10, 1981, the appellants signed an agreement to purchase a mobile home from appellee Miller Enterprises Mobile Homes, owned by the Kremers. The mobile home was manufactured by appellee Kaufman and Broad Home Systems, Inc. Two documents of sale were executed at the same time. One document is on a form titled "Purchase Agreement UCC § 2-201." This document was signed by the appellants and Susan Rae Purdom, on behalf of Miller Enterprises Mobile Homes. The charges are itemized, 17% interest is specified, and the number and amount of the installment payments are stated. This document states that the seller's approval is "Subject to acceptance of financing by bank or finance company." The second document is titled "Sale, Security Agreement and Disclosure Statement" and is apparently a First National Mortgage Company form, the proposed financing agency. The terms of payment are identical to those of the first document except that the monthly payments are to be made to FNMCo. This document also states that the appellee seller has arranged an extension of credit to the buyers from First National Mortgage Company. The appellants and Susan Rae Purdom also signed this document. However, the name of the seller typed on this document is "Miller Enterprises, Inc.," rather than Miller Enterprises Mobile Homes, the actual seller.

The mobile home was delivered on February 12, 1981, to the appellant buyers, who moved in at that time and have since occupied the mobile home. On March 5, or three weeks later, the appellants made complaint to appellee seller concerning a number of alleged defects in the mobile home. Until the defects were corrected, the appellants refused to sign a "Borrower's Authorization Certificate" directing

FNMCo to pay the seller. This certificate contained a sentence stating, "DO NOT SIGN THIS FORM UNTIL THE MOBILE HOME HAS BEEN INSTALLED AND SET UP TO YOUR SATISFACTION." Notice of the defects was transmitted by the appellee seller to the manufacturer, Kaufman and Broad, which had warranted the mobile home. On Saturday, March 21 a repair crew from Kaufman and Broad's factory in Texas arrived at the mobile home. Part of the defects were cured that day. However, the crew was unable to complete the requested repairs. The appellants wrote a note to the Kaufman and Broad service manager stating they were pleased with the corrective work being done and requested that the same crew be returned to complete the repairs.

However, on April 3 the appellants' attorney sent a letter to Miller Enterprises Mobile Homes revoking acceptance of the mobile home because of the existence of various defects. On April 4 a repair crew from Kaufman and Broad appeared at the mobile home to complete the repairs. The appellants refused to permit the crew to do so.

Thereafter, Miller Enterprises Mobile Homes instituted this action in chancery court against the appellants, asking the chancellor to order the appellants to specifically perform by executing the Borrower's Authorization Certificate. The complaint further asked for an award of $500 per month for each month the appellants used the mobile home without paying the seller. At trial the pleadings were orally amended asking for a judgment for the purchase price, less the original down payment of the mobile home. Damages also were sought from Kaufman and Broad on the theory that Kaufman and Broad had breached its warranty agreement and the seller had suffered damages thereby. In response the appellants asserted the contract was usurious and also counterclaimed for the return of their down payment, plus incidental and consequential damages. By the time the trial occurred on September 23, 1982, FNMCo had ceased making loans on mobile homes, so the contemplated method of financing was no longer available.

The chancellor found that the mobile home was defective, but that the revocation of acceptance by the appellants was ineffective because the appellants should have given Kaufman and Broad more time to cure the defects. He also found that since the contract was to be assigned to FNMCo, which all parties agree is an institution subject to the Federal preemption of state usury laws, the agreement was not usurious. The chancellor held that the appellants are liable to the seller (Miller Enterprises Mobile Homes) for the unpaid balance of the cash price of the mobile home to be paid in monthly installments over 15 years. Since financing was no longer available through FNMCo, he set the interest rate at 10% rather than 17%. He ordered that the needed repair work be arranged at the seller's expense through and to the satisfaction of a third party contractor.

The appellants first contend that the chancellor erred in not finding the purchase agreement usurious and void under Article 19, Section 13 of the Constitution of Arkansas (1874). They argue that the second document of sale, which indicated that the credit was being extended by FNMCo should not have been admitted into evidence because the seller listed thereon was "Miller Enterprise, Inc.," which was not a party to the suit, rather than Miller Enterprises Mobile Homes, the actual seller and party to the suit. The appellants' theory is that the only admissible document of the sale transaction was the purchase agreement on the UCC § 2-201 form, which listed Miller Enterprises Mobile Homes as the seller. Since the stated interest rate thereon is 17% and Miller Enterprises Mobile Homes is not eligible for the federal preemption of the state usury laws, they contend the transaction is usurious on its face and therefore void. The chancellor found that the statement of the seller's name on the FNMCo form was a mere typographical error and that Miller Enterprises Mobile Homes was intended to be the listed seller. We cannot say that finding is clearly erroneous (clearly against the preponderance of the evidence), so we cannot set it aside. ARCP Rule 52 (a). The only evidence as to how the wrong name appeared on the FNMCo form was the testimony of appellee William Kremer, who testified that the misstatement was a typographical error and that Miller

Enterprises Mobile Homes was intended to be the seller listed on the FNMCo form. His testimony is unrebutted by any evidence in the record.

Appellants' counsel also advances a theory that the name was intentionally misstated as a part of a scheme to avoid the state usury limit. However, there is no evidence in the record to support this argument. A party who pleads usury has the burden of proving it by clear and convincing evidence. *Pulpwood Suppliers* v. *Owens*, 268 Ark. 324, 597 S.W.2d 65 (1980). An intention to charge a usurious rate of interest will never be presumed, imputed or inferred where the opposite result can fairly and reasonably be reached. *Hutcherson* v. *Wood*, 279 Ark. 190, 650 S.W.2d 229 (1983). Here, the evidence supports the chancellor's finding that the agreement was for credit to be extended by FNMCo, an institution eligible for the federal preemption of state usury laws. Since the parties agreed for a sale with the financing extended through FNMCo, their agreement was not usurious.

The appellants next argue that the chancellor erred in refusing to confirm their revocation of acceptance under Ark. Stat. Ann. § 85-2-608 (Add. 1961) and refusing to award them judgment for their down payment plus incidental and consequential damages. In *Marine Mart* v. *Pearce*, 252 Ark. 601, 480 S.W.2d 133 (1972), we stated:

> Our Uniform Commercial Code provides that goods delivered must conform to the sales contract. Ark. Stat. Ann. § 85-2-106 (Add. 1961). The seller, however, has a right to 'cure' a non-conforming delivery, § 85-2-508, and the seller as a 'reasonable time' to effect corrective measures.

The chancellor held that the appellants had not afforded appellee Kaufman and Broad, the manufacturer, a reasonable time to cure the defects in the mobile home. Based on the facts previously recited as to Kaufman and Broad's efforts to repair the mobile home, we cannot say this finding is against the preponderance of the evidence. Therefore, we affirm the chancellor.

On cross-appeal Miller Enterprises Mobile Homes contends that the chancellor erred in forcing it to finance the sale of the mobile home and to correct any defects in it. With respect to the financing, the cross-appellants argue that the order of the chancellor constitutes a reformation of the contract inasmuch as the order requires Miller Enterprises Mobile Homes to finance the sale, which it had not agreed to do. It is further argued that reformation of the contract was not proper because there was no showing of mutual mistake or fraud. *Lyle* v. *Latourette,* 209 Ark. 721, 192 S.W.2d 521 (1946); *Morrilton Ice & Fuel Co.* v. *Montgomery,* 181 Ark. 180, 25 S.W.2d 15 (1930). We agree that the parties intended that financing would be extended by FNMCo and not by Miller Enterprises Mobile Homes. We also agree that there has been no showing of fraud or mistake to justify reformation. In our view, no contract for financing was ever finalized as contemplated by the parties. The chancellor's decision, however, which required payment over 15 years at 10% interest, in effect, made a new contract or financing arrangement for the parties to which neither had agreed. Therefore, we modify the chancellor's decree to the extent it dictates terms of financing for the sale of the mobile home. In the absence of the contemplated contract arranging for the financing of the sale, we hold that the transaction constitutes a mere sale with the appellant purchasers being liable for the balance of the unpaid purchase price. As abstracted, appellees expressed to the court that "[w]e are not asking for seventeen percent (17%) interest. We are asking for the purchase price."

Judgment should be entered for the cross-appellants for the unpaid portion of the sale price. With respect to the repair work, Kaufman and Broad expressed a willingness to be responsible for any needed repairs.

Affirmed on direct appeal and reversed on cross-appeal.