## Eugene RILEY *v.* RED RIVER MARINE, INC., et al

83-238                                          664 S.W.2d 200

Supreme Court of Arkansas
Opinion delivered February 6, 1984

*Richard L. Walloch,* for appellant.

*Hoyt Thomas;* and *Mitchell, Williams, Selig, Jackson & Tucker,* by: *Debra K. Brown* and *Byron Freeland,* for appellee.

GEORGE ROSE SMITH, Justice. This is a usury case in which the chancellor refused to cancel the contract for usury. We disagree with his decision.

On June 25, 1981, the plaintiff, Eugene Riley, agreed to purchase a boat from the defendant, Red River Marine, for

$2,750. Riley was given a bill of sale listing $2,750 as the price, $82.50 as the sales tax (3%), and $275 as a deposit. There was also a notation referring to the transaction as a "90 days layaway."

Riley testified that on September 25 he returned to Red River's place of business in Heber Springs to complete the purchase. He was then told that the price had been increased by $200, making it $2,950. He protested the change, but after some discussion he acceded to it and signed a newly written contract listing the figures as follows:

| | |
|---|---:|
| Selling price | 2,950.00 |
| Sales tax | 82.50 |
| Cash price | 3,032.50 |
| Cash down payment | 832.50 |
| Amount financed | 2,200.00 |
| Finance charge | 355.28 |
| Annual percentage rate | 10% |
| Total of payments | 2,555.28 |

The contract required Riley to pay the above total in 36 monthly installments of $70.98 each, which is to the penny the proper payment at 10% interest if the principal debt was $2,200. Lake's Monthly Installment and Interest Tables, p. 431 (6th ed. 1970). If, however, the actual debt was only $2,000, the transaction would be usurious and void.

Riley testified that when he got home he felt he had been "taken" for $200. After talking to an employee of Borg-Warner Acceptance Corporation, the finance company that bought the contract, Riley employed a lawyer. Word of Riley's dissatisfaction reached Red River's president, Bernard Hargrove, who on November 3 sent Riley a check for $200 explaining that in posting the account "we found a difference in your sales ticket and the Borg-Warner Acceptance Corp. contract in the amount of $200.00. Please accept our apology for this error." Riley refused to cash the check and brought this suit to cancel the contract.

We think the clear preponderance of the testimony, when considered with the documentary evidence, supports

the conclusion that Red River did wrongfully inflate the agreed price by $200 and did charge the maximum interest rate of 10% upon the fictitious price. When a lender fails to identify charges that are being added to the cash price, the trier of the facts is justified in assuming, until convinced otherwise, that the difference is interest. *Jones* v. *Jones,* 227 Ark. 836, 301 S.W.2d 737 (1957).

Riley had written proof that the original agreed price was $2,750. Hargrove admitted on the witness stand that Riley had been overcharged, but neither he nor any other Red River employee was able to give a plausible explanation for the change. Riley testified that the change was deliberately made. Andrew Cobb, the Borg-Warner manager who handled the financing, testified that at the outset he received a credit report, dated June 26, and approved Riley's credit for a selling price of $2,832.50, less a down payment of $632.50. Those figures confirm Riley's testimony, who said he had to increase his down payment to $832.50 when Hargrove raised the price. It is also significant that Red River, despite having added $200 to the selling price, retained the original sales tax figure of $82.50, indicating a selling price of only $2,750.

The chancellor found that no clerical error had been made and that the parties had agreed (as they ostensibly did) upon the new price of $2,950. But the chancellor then went on to hold that "equity would be served" by directing that Red River refund $200 to Riley and rewrite the contract to reflect the lower price. The chancellor's opinion was incorporated in the decree. It is not possible, however, for a creditor to purge a contract of usury by remitting the excessive charge, *Ford Motor Credit Co.* v. *Catalani,* 238 Ark. 561, 383 S.W.2d 99, 11 A.L.R. 3d 1494 (1964), nor should the courts attempt to do so. The only case relied upon by the trial court is not actually comparable: *Universal C.I.T. Credit Corp.* v. *Hugens,* opinion on rehearing, 234 Ark. 1127, 356 S.W.2d 658 (1962). There the seller induced the buyer to sign a blank contract and then filled in an excessive price. There was no admission of fault or attempt to refund the excess, as here. We merely held that the buyer's remedy was to rescind the agreement for fraud rather than to seek cancellation for

usury, because the seller had not actually charged excessive interest.

The decree is reversed and the cause remanded for the entry of a decree canceling the contract.

HAYS, J., not participating.