Randy N. SMITH and Frankie J. Smith *v.* MRCC PARTNERSHIP and Morrison Family Partnership

89-257                                                792 S.W.2d 301

Supreme Court of Arkansas
Opinion delivered June 25, 1990

*Crockett & Brown, P.A.*, by: *C. Richard Crockett* and *Melody L. Noble*, for appellants.

*Gill Law Firm*, by: *Joe D. Calhoun*, for appellees.

TERRY M. POYNTER, Special Chief Justice. Four individuals, the appellees, comprising MRCC Partnership ("MRCC"), owned 641.5 acres of unimproved land in Pulaski County, Arkansas. MRCC granted an option to purchase the land to Real Estate Central Development Corporation ("RECD"), which subsequently exercised its option by purchasing 240 acres of the land. RECD then re-sold numerous separate tracts of the 240 acres to individuals in smaller parcels, including a ten-acre tract to Randy N. Smith and Frankie J. Smith, the appellants.

RECD entered into two contracts with the Smiths, the first on September 18, 1981, reciting a purchase price of $19,000.00, and $1,900.00 downpayment and the balance of $17,100.00, interest at 9 $1/2$% per annum until due and at 10% thereafter and monthly payments beginning November 1, 1981.

Following a five-year period of default, a second contract was executed between the Smiths and RECD. Both contracts were written on identical pre-printed forms and related to the same ten-acre tract. The second contract was executed on or about October 27, 1986. It recited a total purchase price of $27,526.00, a downpayment of $3,000.00, and balance of $24,526.00. The second agreement was backdated to September 21, 1981. The first agreement had been dated September 18, 1981. A special "typed in" paragraph on an otherwise preprinted form stated: "THIS CONTRACT VOIDS ALL PREVIOUS CONTRACTS AND IS THE ONLY OUTSTANDING CONTRACT ON LOT 10, FERNCLIFF HEIGHTS, PULASKI COUNTY, AR. CONTRACT DATED 9-18-81 IS A VOID CONTRACT."

The Smiths had made no payments on the first contract after the downpayment. They had taken possession of the property in 1981 and learned that appellees' partners, rather than RECD, appeared to be the record owners of the property.

MRCC then became involved in litigation with RECD. That litigation was settled. As part of the settlement, the Smiths' contract was assigned, together with several others, from RECD to MRCC. MRCC had no knowledge of the facts surrounding the execution of the second contract.

MRCC initiated a lawsuit for unlawful detainer, seeking to establish its ownership and possessory rights in the property. The Smiths counterclaimed for an accounting, also pleading adverse possession, equitable conversion and usury, and moved to transfer to chancery. MRCC acquiesced in the transfer to chancery. In chancery, MRCC added an alternative prayer for foreclosure.

The chancellor held the contract to be a forfeitable executory land contract, forfeited the contract and gave MRCC judgment for $3,510.00, plus $9.00 per day after April 30, 1989, for rent from the date of the default on the contract. The Smiths appeal from that determination. The trial court also found the second contract to be an extension of the first and usurious, that the downpayment on the second contract constituted a payment of interest, that all other payments on that contract represented payments of interest, and that, thus, the Smiths had paid total interest of $5,340.00. She applied the double interest penalty of Amendment 60 to the Constitution of Arkansas and rendered judgment for the Smiths against MRCC for $10,680.00. From that judgment, MRCC has cross-appealed.

## I. DIRECT APPEAL

We think the result in the direct appeal is dictated by a line of cases represented by our decision in *Triplett* v. *Davis*, 238 Ark. 870, 385 S.W.2d 33 (1964), and *White* v. *Page*, 216 Ark. 632, 226 S.W.2d 973 (1950), cited by the Court of Appeals in *Abshire* v. *Hyde*, 13 Ark. App. 33, 679 S.W.2d 214 (1984).

In *White, supra*, this court said:

We have many cases recognizing that a purchaser's rights under an executory contract affecting real estate may be forfeited pursuant to the contract without proceedings in law or in equity (citing cases).

The forfeiture language in the contract before us is virtually identical to that contained in the contract under consideration in *Abshire, supra*.

The Smiths do not challenge the rule of these cases. Instead, they offer a shopping list of reasons to avoid its application:

1. The Smiths argue that the document before the court

is not an executory contract for the sale of land but a "bond for title." That issue, having not been raised in the trial court, will not be considered here. *B. C. Coney Co.* v. *Radford Petroleum Equipment Co.*, 287 Ark. 108, 696 S.W.2d 745 (1985).

2. The Smiths suggest that MRCC has accepted the note (on the reverse side of the contract) as full payment of the contract price; that, thus, they hold the note as the debt secured by a vendor's lien on the property. The Smiths direct us to no proof of such intent in the MRCC. Moreover, the integration of the note and contract belies such intent. The express language of the note makes it a part of the contract. The terms of payment of the note cannot be determined without reference to the contract. Thus, we cannot say that the chancellor erred in refusing this argument.

3. The Smiths argue that MRCC did not properly deraign title at the trial. MRCC sought to prove title by the affidavit of a title company, which the Smiths insist was admitted over their objection. Actually, the objection was to the affiant's failure to give "the book and page of the entire chain of title." Faced with that objection, we believe that the trial court was correct in determining that the affidavit should be admitted and that the missing information should be considered. The admissibility of evidence is within the sound discretion of the trial court. *Delta School of Commerce, Inc.* v. *Wood*, 298 Ark. 195, 766 S.W.2d 424 (1989). We find no abuse of discretion.

4. Finally, the Smiths ask this court to apply the doctrine of equitable conversion by contract. Almost universally adopted by the courts, though criticized as a useless but harmless fiction, this doctrine permits a court of equity, in certain circumstances, to consider an interest in real property as having been converted into an interest in personal property and *vice versa*. *See*, generally, Comment, *Equitable Conversion by Contract*, 7 Ark. Law Rev. 45 (1952). The equitable rights and obligations of the parties to such a contract are generally summarized as follows: The entire interest of the vendor in the land is naked legal title, which he holds as security for the payment of the purchase price, subject, however, to an obligation to convey to the purchaser. His legal title is, of course, still real property, but his beneficial interest, including the security interest which equity attaches to the right

to receive the purchase money, is personalty. The purchaser, on the other hand, has a beneficial interest in the land itself plus the obligation of the vendor to convey legal title to him. The rights of the vendor are, in equity, considered personal property, and the correlative rights of the purchaser are considered real property.

Typically, this device has been applied to aid in the determination of issues of risk of loss, the relative rights of the various parties involved in decedents' estates, and the rights of creditors of the vendor and vendee in the property of each. The Smiths have cited us to no case, and indeed we find none, in which this otherwise handy fiction has been applied to construe a contract such as the one before the court. To do so would effectively delete the forfeiture clause and effectively rewrite the contract entered into between the parties. We have historically refused to rewrite contracts. *See Three States Lumber Company* v. *Bowen*, 95 Ark. 529, 129 S.W. 799 (1910).

Aside from these contentions, the appellants also argue that:

1. The trial court should have forced MRCC to elect between the remedy of determination of the contract and foreclosure. MRCC had first asserted the right to determine the contract by filing the unlawful detainer action and then by amendment, after the case was transferred to chancery, to seek foreclosure in the alternative. An essential element to an election of remedies argument is the availability of both remedies. *Williams* v. *Westinghouse Credit*, 250 Ark. 1065, 468 S.W.2d 761 (1971). It thus appears that the Smiths alternatively take inconsistent positions: *i.e.*, that foreclosure is the only proper remedy, on the one hand, and that the chancellor should have required the appellees to elect between that remedy and a remedy they argue was not available, on the other. Under the circumstances, we cannot say the chancellor erred.

2. It is inequitable for the court to give MRCC both determination of the contract and rent for holding the property after the breach of the contract. The short answer is that both remedies were provided by the contract. Again, we decline to rewrite the contract. *Curry* v. *Commercial Loan and Trust Co.*, 241 Ark. 419, 407 S.W.2d 942 (1966).

Neither did the court err in refusing to award the

Smiths damages for the improvements they allegedly made on the property. Arkansas Code Ann. § 18-60-213 (1987) requires one entitled to recover for such improvements to meet two tests: 1) he must believe himself to be the owner of the property and 2) he must hold under color of title. The Smiths cited Black's Law Dictionary, 4th Edition, defining "color of title" as "the appearance, semblance or simalcrum of title; a writing on its face professing to pass title but which does not, either through want of title in the grantor or defective mode of conveyance."

Neither test was met. Both Randy and Frankie Smith testified that they considered RECD to be the owner. The contract under which the Smiths were in possession did not purport to convey title. By it, the seller agreed to convey only after the Smiths fully performed the contract.

## II. CROSS-APPEAL

The chancellor found that the second agreement was usurious. It is not usurious on its face.

Usury occurs when a lender charges more than the legally permissible maximum rate of interest, defined by Article 19, § 13, of the Arkansas Constitution (1874), as amended by Amendment 60. The trial court found that the "date of contracting" was October, 1986, after the adoption of Amendment 60. On the date of the second contract, the federal discount rate was $5\frac{1}{2}\%$, making the maximum allowable interest rate in Arkansas $10\frac{1}{2}\%$.

For an agreement to be usurious, it must be so at the time it was entered into. *Hayes* v. *First National Bank of Memphis*, 256 Ark. 238, 507 S.W.2d 701 (1974). Where the usury is not apparent on the face of the document, the borrower must show that the lender intended to exact a usurious rate of interest. *Montgomery Ward & Company* v. *Credit*, 274 Ark. 66, 621 S.W.2d 855 (1981). The party asserting usury has the burden of proof. *Medford* v. *Wholesale Electric Supply Co., Inc.*, 286 Ark. 327, 691 S.W.2d 857 (1985). The proof must be sustained by clear and convincing evidence. *Commercial Credit Plan, Inc.* v. *Chandler*, 218 Ark. 966, 239 S.W.2d 1009 (1951). The intention to charge a usurious rate of interest will never be presumed, imputed or inferred where the opposite result can be

fairly and reasonably reached. *See*, for example, *Rhode* v. *Kremer*, 280 Ark. 136, 655 S.W.2d 410 (1983).

The linchpin of the chancellor's decision is that the October, 1986, contract was not a new, separate and distinct transaction but an extension of the 1981 agreement. This conclusion is drawn from the following facts:

1. The second agreement was backdated to within three days of the first, a circumstance the trial court found not satisfactorily explained by the appellees' witnesses.

2. The increased price contained in the second agreement "falls within about $120.00" of the accrued interest and selling price of the original agreement. The chancellor found this mathematical relationship to be an indicator of an intent to extend the former agreement, and that the failure of MRCC's witnesses to explain the difference in the purchase price of the two agreements justifies the finding of usury. Parenthetically, it would appear that, where the issue is extension of a previous agreement, the more apt comparison would be that between the balance of the purchase price owing on the first agreement after the downpayment ($17,100.00) and the selling price under the second agreement ($27,526.00). That comparison produces a difference of $10,426.00, which has no particular relation to the amount of interest found to have been earned under the first agreement ($8,405.42).

3. The testimony of a CPA, who testified that if the second contract or note had been timely paid from the date approximate to its origination, (11/1/86) through March 1, 1989, at the maximum allowable interest rate of $10\frac{1}{2}\%$ per annum, the maximum allowable chargeable interest would have been $6,181.52. The CPA then assumed that the Smiths' "downpayment" on the second agreement of $3,000.00 was interest. When he added that sum to the other payments made during the period (which he also attributed to interest), the total interest would have been $8,595.05, clearly in excess of the maximum allowable, and *a fortiori*, usurious.

From this testimony and the circumstantial evidence, the trial court concludes that the second agreement was an extension of the first and that the "intent underlying the second, backdated

agreement was to gain the uncollected, accrued interest under the original agreement by increasing the purchase price."

Even assuming that the proper inferences were drawn from this evidence, the intent to capture the accrued interest on the first agreement does not amount to an intent to collect a usurious rate of interest. This court has held that it is not usury to add interest when it becomes due to the principal on an antecedent debt and to take a new note for the whole, with interest at the maximum legal rate from the date of the new instrument. *Morgan* v. *Rogers*, 166 Ark. 327, 266 S.W. 273 (1924).

Moreover, the requirement to explain the backdating of the document and the difference in the purchase prices in the two agreements seemed to require an unwarranted expansion of the doctrine set out in *Riley* v. *Red River Marine*, 281 Ark. 300, 664 S.W.2d 200 (1984), which is an expansion of that contained in *Jones* v. *Jones*, 227 Ark. 836, 301 S.W.2d 737 (1957).

The *Jones* case involved a loan which called for the repayment of principal, a specified amount of interest and premiums on a credit life policy. After the loan documents were executed, it was discovered that the credit life premiums were actually less than that set out in the loan documents. In that case, this court simply reaffirmed the principle that charges to a borrower, regardless of what they are called, will be considered interest unless the lender can attribute them to an articulable out-of-pocket expense. The *Riley* case was one in which a party contracted to buy a boat from a dealer on a "layaway" purchase. An agreement was entered setting out the purchase price, sales tax, downpayment and interest. When the purchaser returned to pick up the boat and complete the purchase, the dealer unilaterally raised the price $200.00. Citing the *Jones* case, this court said that the additional charge might be considered interest by the trier of fact until convinced otherwise.

The distinction between the case at bar and the *Riley* case is apparent. In that case, the seller unilaterally sought to increase the purchase price in a situation where he was bound by his prior agreement. In this case, the seller was not obligated to sell the property to the Smiths at any price.

While every fact of an agreement is important in determin-

ing the intent of the parties, the rationale underlying these two cases does not mandate a rule that lenders or sellers explain every term of lending or sales contracts (in a proper case) unrelated to charges for a loan or the elements of a purchase price.

■ Upon a complete review of the record, the court concludes that neither the proof relied upon by the chancellor, either individually or collectively, nor the evidence as a whole rises to the level of clear and convincing proof of usury. The decision of the trial court as to usury is, therefore, reversed.

Having determined no usury was present, we dismiss the usury claim, and we do not discuss the pre-judgment interest sought by the Smiths.

Finally, we deal with the Smiths allegations of adverse possession and the sanction sought by MRCC under Rule 11 of the Arkansas Rules of Civil Procedure based on those allegations and the pursuit thereof before the trial court.

The Smiths' allegations of adverse possession are at best incredible and at worst constitute bad faith. It is uncontroverted that the time from which the Smiths went into possession under their first contract to the date of the filing of the lawsuit did not span the requisite seven years. Arkansas Code Ann. § 18-61-101 (1987). Possession was commenced amicably. It does not appear that the Smiths ever thought of themselves as holding adversely or hostilely to MRCC, or their predecessors in interest, or that they gave them any notice of such an intent. Moreover, they negotiated a second agreement with MRCC's predecessors in interest in 1986 and made payments both to MRCC and the predecessors in interest under that agreement. Such payments represent the antithesis of hostile possession. The trial court declined to impose sanctions, finding that *de minimis* trial time was spent on the issue.

■ We believe that where the requisite factual predicates are found, the sanctions provided in Rule 11, Ark. R. Civ. P., are mandatory. On the other hand, because of our holding in *Bratton v. Gunn*, 300 Ark. 140, 777 S.W.2d 219 (1989), according substantial deference to the trial court's discretion with regard to imposing or withholding sanctions, the chancellor's failure to find facts constituting an offense to Rule 11, and our reluctance to

remand this case on this issue alone, we decline to find the lower court's decision clearly erroneous on this point and affirm.

On direct appeal, we affirm the trial court; on cross-appeal, we affirm in part and reverse and dismiss in part.

Special Justices LEON N. JAMISON and ALLEN P. ROBERTS join in this opinion.

HOLT, C.J., and DUDLEY and HAYS, JJ., not participating.